D. J. GATES v. S. V. PARROTT ET AL.

[FILED MARCH 17, 1891.]

1. **Agistment: LIEN.** When a person furnishes feed and takes care of live stock under a contract with the owner thereof, such person has a lien upon such stock for their keeping, and the owner cannot lawfully obtain possession of the same by legal process until he has paid or tendered the amount due for their feed and care.

2. **Execution: REPLEVIN: DAMAGES.** Where an officer levies an execution on property not in the possession of the judgment debtor, and the property is afterward replevied from the officer by the person in whose possession it was when seized, the measure of the officer's damages, within the value of the property, is the amount due upon the execution and legal costs.

ERROR to the district court for Boone county. Tried below before HARRISON, J.

*J. E. Philpott*, and *S. R. Anstine*, for plaintiff in error, cited, as to the agister's lien: *Guthman v. Kearn*, 8 Neb., 502.

*Matt. Miller, contra.*

Norval, J.

This is an action in replevin brought by the plaintiff in error to recover the possession of thirteen head of cattle, two of which the plaintiff claims to be the owner of, and he asserts the right to possession of the other eleven head by virtue of an agister's lien for feed and keeping.

In the district court the verdict of the jury was for the plaintiff as to the two head, and in favor of the defendants as to the remainder of the cattle.

The proof shows that John A. Westover and James S. Armstrong were at one time partners engaged in business under the firm name of Armstrong & Westover, and at the time the partnership was dissolved the firm owned certain personal property, including the eleven head of cattle in controversy, which remained undivided. On the 16th day of January, 1885, after the firm had ceased to do business, John A. Westover executed in the firm name of Armstrong & Westover a note for $900 to Nelson Westover and gave a chattel mortgage, in the name of the firm, upon the eleven head of cattle and other property to secure the payment of the note. Subsequently Nelson Westover assigned the note and mortgage to one Henry E. Lewis, who placed it in the hands of his attorney to foreclose. James P. Starring took a portion of the cattle replevied in this case under the mortgage and turned them over to the plaintiff for feed and care until the day of sale.

Afterward, on the 24th day of December, 1886, the district court of Boone county, in a cause pending therein wherein James S. Armstrong was plaintiff and Henry E. Lewis, Nelson Westover, James P. Starring, and John A. Westover were defendants, entered a decree that the note and mortgage were null and void, canceled the same and perpetually enjoined the sale of the property described in this mortgage.

On the 22d day of February, 1887, the defendant

Frank Miller, as constable, levied an execution issued out of the county court of Boone county, on a judgment in favor of the Schuyler National Bank against Armstrong & Westover, upon the property in suit, took the same from the possession of the plaintiff and placed the cattle in the care and custody of the defendant S. V. Parrott. The following day this action was brought.

The judgment of the lower court, in so far as it is in favor of the plaintiff, is clearly right. The undisputed evidence shows that the plaintiff, at the commencement of the suit, was the general owner of two of the cattle, and was entitled to their possession. They were levied upon by the officer through a mistake, he supposing that they belonged to Armstrong & Westover.

Of the remaining eleven head that were replevied, the proof shows that two of them were delivered to the plaintiff by John A. Westover, under a contract to feed and care for the same, on the day the mortgage was made to Lewis. The plaintiff claims an agister's lien for feed furnished and care bestowed upon the entire eleven head.

Sec. 28, art. I, ch. 4, Comp. Stats. 1887, reads as follows: "When any person shall procure, contract with, or hire any person to feed and take care of any kind of live stock, it shall be unlawful for him to gain possession of the same by writ of replevin, or other legal process, until he has paid or tendered the contract price, or a reasonable compensation for taking care of the same."

It is obvious that when the owner of live stock contracts with another to feed and care for the same, the above quoted section in express terms gives to the agister a lien upon the stock for their keeping, and the owner cannot lawfully obtain possession of such stock until he has paid or tendered to the agister the amount due for their feed and care. As to two head of the cattle, Westover, one of the general owners, contracted with the plaintiff to feed and care for them. It is very clear that the plaintiff had,

under the statutes, a lien therefor. The cattle were levied upon and taken from the plaintiff without his consent, and as the amount due him for the feeding, care, and keeping of the two head had neither been paid or tendered, the plaintiff had such an interest as entitled him to maintain replevin therefor.

As to the remaining nine, the agisting contract was not made with either of the owners of the stock, but with the agent of the mortgagee, Lewis, whose mortgage was invalid. The plaintiff therefore acquired no lien upon the cattle for the feeding and care, as against Armstrong & Westover or their execution creditors. It appears that Armstrong demanded the cattle from the plaintiff shortly after they came into his possession, which was refused, and the plaintiff was then informed he would not receive any pay for their keeping. No estoppel was therefore created against the owners of the stock.

The jury, by their verdict, found the right of possession to the eleven head of cattle in the defendants, and assessed their damages at $134.48. We are at a loss to know upon what theory the damages were assessed. It was stipulated by the parties that the defendants claimed the possession of the property by virtue of a levy under an execution. The writ was not introduced on the trial, nor was the judgment upon which the same was issued. Where an officer levies an execution on property not in possession of the judgment debtor, and the property is afterwards replevied from the officer by the person in whose possession it was when seized, the measure of the officer's damages within the value of the property is the amount due upon the execution and legal costs. (*Black v. Winterstein,* 6 Neb., 224; *Frey v. Drahos,* 7 Id., 194; *Kersenbrock v. Martin,* 12 Id., 375; *Welton v. Beltezore,* 17 Id., 399; *Cruts v. Wray,* 19 Id., 583; *Williams v. Eikenberry,* 22 Id., 216.)

As there is not a syllable of evidence to show the amount

due upon the judgment and execution, the defendants were only entitled to recover nominal damages.

For the reasons stated, the judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.