OMAHA COAL, COKE & LIME COMPANY v. PATRICK H. FAY ET AL.

FILED MAY 16, 1893.    No. 4756.

1. **Appeal from County Court**: ORDER FOR TRANSCRIPT: NEGLECT OF COUNTY JUDGE. A defeated party to an action in the county court, who promptly orders a transcript of the proceedings to be prepared for the purpose of appealing the case, will not be denied the right of appeal because the county judge fails to prepare the transcript within thirty days after the rendition of judgment.

2. ———: DELAY IN FILING TRANSCRIPT: OBJECTION: WAIVER. Where a transcript for the purpose of appealing a case to the district court is filed after the statutory period has elapsed, the appellee by filing pleadings and contesting the case on its merits waives his right to object to the delay, even though this action be taken after the overruling of a motion by him made challenging the validity of the appeal.

3. **Sale of Commodity**: IMPLIED WARRANTY. Where one contracts to supply a commodity in which he deals, to be applied to a particular purpose of which he is aware, under such circumstances that the buyer necessarily trusts to the judgment of the vendor, there is an implied warranty that the commodity shall be reasonably fit for the purpose to which it is to be applied.

4. ———: ———: BREACH OF CONTRACT: MEASURE OF DAMAGES: INSTRUCTIONS. Where the law provides a definite measure of damages the court should instruct the jury specifically how the damages should be assessed, and an instruction stating a general principle in the admeasurement of damages, broader than is applicable to the particular case presented, and not qualified by other instructions, is erroneous.

5.   ———: ———: ———: CONSEQUENTIAL DAMAGES: PLEADING: INSTRUCTIONS.   Where only consequential damages are claimed they must be specially pleaded, and in such cases the jury should be confined by the instructions in assessing the amount of recovery to the consideration of such damages as are so pleaded.

6.   ———: BREACH OF WARRANTY: CONSEQUENTIAL DAMAGES from breach of warranty in the sale of chattels cannot be recovered where the vendee, by exercising ordinary prudence and judgment, could have avoided the consequences complained of.

7.   ———: ———: CONSEQUENTIAL DAMAGES: RECOVERY.   A sold lime to B for the purpose of plastering a building, the circumstances justifying a finding that A impliedly warranted the lime to be reasonably fit for the purpose intended.   The lime was used by B in plastering the building.   The work proved defective, and the evidence sustained a finding that the defect was in the quality of the lime.   B thereupon papered the side walls and replastered the ceilings with another material.   He then brought suit against A to recover the cost of such papering and replastering.   *Held*, That in such case this expense could not be recovered unless it was shown: First, that the defect in the lime could not, by a person accustomed to use such materials, have been discovered before it was used in making plaster and applied to the walls, and, secondly, that the mode of remedying the defect was reasonable and did not exceed in cost that of replastering with the same kind of material of good quality.

8.   ———: IMPLIED WARRANTY: WHEN BROKEN.   In the sale of a special kind of a known general material for a particular purpose, the circumstances implying a warranty that the material is reasonably fit for the purpose intended, if the special material sold requires a different manner of use or treatment in applying it to the purpose intended than that required in the use or treatment of the same general material of other kinds, and this different requirement is known to the vendor and not to the vendee, the warranty is broken if the vendee uses and treats the material as similar material is customarily treated, and if so used it does not prove reasonably fit for the purpose.

9.   ———: ———: ———: INSTRUCTIONS.   An instruction is erroneous which states the foregoing rule but omits the requirement of a warranty in the sale, the fact of such warranty being in issue, and leaves the jury to infer that there may in such case be a recovery in the absence of a warranty.

10.   ———: BREACH OF WARRANTY: TRIAL: EVIDENCE: REVIEW. The trial court may, in its discretion, require that offers of evi-

Omaha Coal, Coke & Lime Co. v. Fay.

dence objected to be made in such a manner as not to reach the ears of the jury, and should adopt this course where the offer to be made threatens to prejudice the party objecting if heard by the jury. A verdict will not, however, be disturbed because of the refusal of the trial court to so order, unless it is apparent from the record that there was an abuse of discretion.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*Howard B. Smith* and *Clinton N. Powell,* for plaintiff in error.

*Brome, Andrews & Sheean, contra.*

IRVINE, C.

The defendants in error sued the plaintiff in error in the county court of Douglas county, asking judgment on account of an alleged breach of warranty in the sale of lime by plaintiff in error to defendants in error. Judgment was rendered December 30, 1889, in favor of defendants in error. An appeal bond was filed and approved within the time limited by law, but no transcript was filed by plaintiff in error until February 3, 1890. Upon the filing of that transcript the defendants in error moved for judgment in the district court. The motion does not appear in the transcript, but from the statements of counsel, and the orders made, it appears to have been a motion made under section 1011 of the Code. This motion was heard upon affidavits which are incorporated in a bill of exceptions, and on March 8, 1890, the motion was by the district court overruled. Thereupon the defendants in error filed their petition in the district court. Issues were joined and the case tried on its merits, resulting in a verdict for defendants in error in the sum of $756.96. The plaintiff in error seeks in this proceeding to reverse that judgment.

The greater part of the argument on behalf of defend-

ants in error is devoted to questions arising out of the state of facts above set forth. While no proceedings in error were instituted by the defendants in error here, the plaintiffs below, for the purpose of reviewing the action of the district court in refusing to enter judgment in their favor on account of the delay in filing the transcript in the district court, they contend that that action of the district court was erroneous, and that inasmuch as it presented a question of jurisdiction the plaintiff in error cannot complain of the final judgment against it, because upon the face of the record the defendants in error were entitled to have entered in the district court a larger judgment.

The question thus raised we do not deem it necessary to consider, and this for two reasons. In the first place we cannot say that the court erred in overruling the motion for judgment. While the affidavits used upon the hearing of the motion were conflicting, the preponderance of the evidence contained therein was to the effect that the attorney for plaintiff in error, immediately upon the rendition of judgment in the county court, ordered a transcript of the proceedings for the purpose of appeal to be prepared for his use; that the clerk having charge of that business overlooked this request and neglected to prepare the transcript until February 3; that on January 28 the attorney referred to was taken ill and was confined to his house until after the expiration of the time limited by law for perfecting his appeal. While we do not decide that the illness of a party or his attorney is sufficient excuse for failing to perfect an appeal within the time limited by law, the case of *Cheney v. Buckmaster*, 29 Neb., 420, is authority for holding that where a transcript was ordered promptly a party intending to appeal is justified in relying upon the presumption that it will be prepared within a proper period, and that he cannot be deprived of his appeal by the failure of the county judge to so prepare it. The plaintiff in error ordered the transcript immediately upon the ren-

dition of judgment, and he was not required by law to procure it and file it in the district court within any shorter time than thirty days after the rendition of judgment. The transcript was not prepared within this time, and even had the attorney not been ill, had he gone to the county judge to request the transcript upon the thirtieth day it would not have been ready. We think, therefore, that the district judge was justified by the evidence in overruling the motion for judgment.

The second reason why the defendants in error cannot now complain of the delay is found in the fact that they did not rest upon their motion but proceeded to file pleadings, and to try the case upon its merits. In so doing they waived their rights to object to the delay. (*Goodrich v. City of Omaha*, 11 Neb., 204; *Steven v. Nebraska & Iowa Ins. Co.*, 29 Id., 187.) It is true that in the cases just cited a general appearance had been entered before any action was asked seeking to dismiss the appellate proceedings; but these cases establish the general proposition that the district courts have jurisdiction of the subject-matter of such appeals, and that a failure to perfect the appeal within the time merely goes to the jurisdiction of the court over the persons of the appellees. Upon this general principle it is clear that a defect in the proceedings requisite to give jurisdiction is cured by a subsequent general appearance. In *Bazzo v. Wallace*, 16 Neb., 290, a motion was filed in this court to dismiss an appeal, and it was held that a stipulation filed subsequently constituted a general appearance and a waiver of rights under the motion.

It is clear from the foregoing considerations that the defendants in error cannot, upon the grounds urged by them, preclude the court from examining the questions raised upon the trial of the case and presented in the petition in error.

In order to properly present the views of the court upon the merits of the case a more specific statement of the facts

will be of assistance.   The defendants in error were engaged as partners, under the name of Fay & Byrne, in the business of plastering buildings.   The plaintiff in error was a dealer in coal, lime, and other materials.   About the 1st of July, 1889, Fay & Byrne contracted with the plaintiff in error for the purchase of lime to be used in plastering a building known as the Merchants' Hotel, making known to the plaintiff in error the purpose for which they desired the lime.   The first of this lime was delivered July 5, and the plaintiff in error continued to deliver it at intervals, and Fay & Byrne used it in making mortar with which they placed the "brown coat" on three floors of the hotel.   After this brown coat had been applied, and as Fay & Byrne were proceeding to apply the finishing coat, the plastering already applied began to drop from the walls and ceiling.   Fay & Byrne finally covered the side walls of these three stories with paper in order to prevent the falling of the plaster, and replastered the ceiling with a material known as adamant.   They then brought suit against the plaintiff in error alleging a warranty in the sale of the plaster to the effect that it was of first-class and best quality, and fit and proper for use in plastering hotels. In a second count of the petition they alleged the warranty to be that it was reasonably fit and proper for the purpose aforesaid.   They further alleged that the lime was not of the quality warranted, and that by reason thereof the plaster upon the building was not good, and that they were compelled to replaster the ceilings and paper the walls as before stated.   They pray damages for the cost of this work.

The answer admits the sale of the lime and denies the other allegations of the petition.   It further pleads a set-off which was admitted in the reply and need not be further noticed.

It is urged that there is no evidence at all to show a warranty in the sale of the lime.   The evidence offered by

Fay & Byrne lacks much of being conclusive upon this point, but we think there is sufficient to sustain the verdict. Fay testifies that he made the contract for the lime; that Mr. Hill, an officer of the company, asked him (Fay) if his firm was going to do the plastering on the Merchants' Hotel, and being informed that they were, Hill said they had lime that was far superior to anything on the market, and spoke of its good qualities. Fay said he was timid about experimenting on any new lime, and Hill said that it would be no experiment; that the lime was guaranteed to every man they sold it to, and if plaintiffs bought it they would guarantee it to them; that he had not at that time used any of this lime; that after this conversation with Hill he consulted his partner, and some time later told the officers of the company that if they would guarantee the lime plaintiffs would take it, and they said "all right." It appeared on cross-examination that before work began on the Merchants' Hotel, Fay & Byrne had used some of the lime in question upon another building, and plaintiff in error contends that the conversation narrated by Fay referred to this purchase, and not to the lime purchased for the hotel. Fay explains that he had the first conversation with Hill before buying the lime for the other house but did not complete the purchase until the other house was finished.

Mr. Byrne testifies that he talked with Hill before the purchase, and Hill said the lime would do better work than any in the market, and that he would guarantee it to do as he said. It also appears in evidence that a portion, at least, of the lime used in the hotel was not shipped to Omaha until after the contract was made, and as to this portion, at least, Fay & Byrne had no opportunities for inspection.

Whether this testimony is sufficient to establish an express warranty we need not determine. Where there is no opportunity to inspect the commodity, the rule of *caveat*

*emptor* does not apply. When one contracts to supply an article in which he deals, to be applied to a particular pur- pose so that the buyer necessarily trusts to the judgment or skill of the vendor, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied, and the better doctrine is that this rule applies to dealers as well as to manufacturers, and not to manufact- urers alone, as the plaintiff in error contends. There is certainly sufficient testimony to warrant the jury in find- ing that Fay & Byrne justifiably relied upon the coal com- pany to furnish lime suitable for the purpose to which they intended to apply it. The second count of the petition seems to have been framed very carefully in order to ap- ply to this view of the case. There were no exceptions taken to the instructions given by the court upon the ques- tion of warranty, and the finding of the jury upon the ev- idence and these instructions cannot be disturbed.

It is also contended that, conceding the existence of a warranty, as claimed, there is no evidence that the lime failed to comply therewith. Without reviewing the evi- dence, which is very voluminous upon this subject, we will say that we deem it sufficient to sustain the verdict, al- though the writer, were he called upon to find the facts in the first instance, would very likely have found them for the plaintiff in error.

The court of its own motion instructed the jury as fol- lows:

"If you find for the plaintiffs you will assess such dam- ages as the evidence convinces you is just, deducting there- from the amount of $298.87, admitted to be due defendant, with interest at seven per cent per annum from February 6, 1890, up to the 9th day of February, 1891."

At the request of the defendants in error the following instruction was given:

"When two parties have made a contract which one of them has broken, the damages which the other party ought

to receive in respect to such a breach of contract should be either such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. And if you find from the evidence in this case that defendant knew the purpose for which the lime sold plaintiffs was to be used, and warranted the same to be good lime, suitable for the purpose for which they knew it was to be used, and you further find from the evidence that the lime in question was not good lime, and was not suitable for the purpose for which defendant knew it was to be used, then your verdict will be for plaintiffs, and you will determine from the evidence what damages plaintiffs have sustained, and allow plaintiffs by your verdict such sum as the evidence shows the damages they have sustained amount to, bearing in mind that plaintiffs are entitled to recover in that event only such damages as may reasonably be supposed to have been contemplated by plaintiffs and defendant at the time the lime in question was sold."

Both of these instructions were excepted to by plaintiff in error, and they are the only instructions given on the measure of damages.

In giving the instruction last quoted the court stated the rule in *Hadley v. Baxendale*, 9 Ex. Rep. [Eng.], 341. This has been approved in *Sycamore Co. v. Sturm*, 13 Neb., 210, and is undoubtedly correct as a statement of a general proposition of law. But we do not think it should have been given in this case without further instructions confining the jury to such damages as under the pleadings and evidence would come within the rule. The damages claimed were consequential in their nature, and only such damages of that character could be recovered as were expressly pleaded; that is, the cost of replastering the ceiling and repapering

the walls.    In cases of this character the rule of avoidable consequences applies.    The defendants in error could not recover these items of expense if the defects in the lime might, by persons accustomed to the use of such articles, have been discovered before the lime was made into mortar and placed upon the walls.    If Fay & Byrne did discover or should have discovered the defect before plastering the walls, they should not have proceeded to use the lime, and they could not hold the plaintiff in error liable for damages consequent upon the use of the lime after such discovery. This rule certainly applies in the case of articles readily purchasable in the market, where the vendee is not by force of circumstances compelled to proceed with the imperfect article delivered.

Furthermore, in cases of this character, where consequential damages are recoverable, the ordinary measure of those damages would be the cost of replacing the defective work with other material of the character and quality which should have been furnished in the first instance—in this case the cost of replastering the walls and ceiling with plaster.    Another method was here pursued.    The side walls were papered, and it is fairly inferable from the evidence that the cost of papering was less than that of replastering; but the ceilings were replastered with adamant, which is shown by the evidence to be more expensive than plaster.    The cost of repairing the damage in this way would be a fair measure of damages, provided the method pursued was a reasonable method, and did not exceed in cost that of replacing the defective work with proper material of like character.    These are matters of law which should have been stated to the jury in order that they might ascertain from the evidence whether or not the circumstances existed which would justify the allowance of such damages, and also to give them a definite rule for ascertaining the amount.    The instruction given by the court of its own motion was so general that it gave the

jury no rule of damages whatever; that given at the request of the defendants in error did not restrict the jury to the damages pleaded, and did not state with sufficient certainty the rule for assessing the amount thereof or the conditions of recovery.

The errors above referred to require that the case should be reversed, but as a new trial will be necessary it will be proper to consider some of the other questions presented, which will probably recur upon a further hearing.

At the request of defendants in error the following instruction was given:

"You are instructed that plaintiffs were bound only to use the lime in question in the ordinary and usual manner, and the fact, if it be a fact, that the lime in question, in order to be properly prepared for plastering, required a different process, with respect to the slacking and mixing thereof, from the process and method ordinarily and usually used in slacking and mixing lime for such purpose, and you further find from the evidence that plaintiffs did not know of the peculiar quality of such lime, and could not be reasonably supposed to have possessed such knowledge, and you further find from the evidence that defendant did not communicate to plaintiffs the fact that the lime in question was of a peculiar quality, other and different from ordinary lime, and that its successful use for the purpose of plastering required that it be slacked and mixed in a manner other and different from the method usually employed with ordinary lime, and you further find from the evidence that plaintiffs did slack and mix the lime in question in the usual and ordinary manner, and exercised ordinary care and skill in and about the slacking and mixing thereof, then and in that event plaintiffs would be entitled to recover in this action, even though you should believe from the evidence that the lime in question was good lime, if you further find that plaintiffs sustained damage by reason of the use of such lime in the usual and ordinary

Omaha Coal, Coke & Lime Co. v. Fay.

manner for the purpose for which it was purchased.  Providing you find from the evidence that the defendant knew at the time of sale that the lime required a different process in respect to the slacking and mixing thereof."

It is urged that there was no evidence to which this instruction was applicable.   We find, however, in the record evidence tending to show that the lime sold required a great deal of water in the process of slacking, and that when slacked with the amount of water customary with other limes, it became very hot and burned, and that lime used after being so burned impairs the quality of the plaster. We think this evidence justified an instruction of this general character, and that the instruction correctly states the law, except that by omitting all reference to the warranty it might leave the jury to infer that under the state of facts disclosed there might be a recovery in the absence of any warranty expressed or implied.

The plaintiff in error requested the following instruction:

"You are instructed that if you find from the evidence that any lime which slacks well will make good plaster, if properly mixed with other good materials in right proportion, and if you further find that the lime in question slacked well, you must find for the defendant."

This instruction was properly refused.   So far as it was a statement of law, it was equivalent to telling the jury that if the lime, when properly used, was fit for the purposes intended there could be no recovery ; this had already been covered in the court's instructions.   So far as the instruction refers to specific facts, it relates purely to an inference of fact and not of law.

Objection is also made to the court's permitting counsel for defendants in error to make proffers of evidence in the hearing of the jury.   By a long line of decisions it is established that the defendants in error, in order to preserve for review the rulings of the court in excluding evidence by them offered, were compelled to make profert of the

evidence.    This rule may undoubtedly be used by designing attorneys, for the purpose of making unfair and prejudicial statements in the hearing of the jury.    The trial court undoubtedly may, and when such an abuse is threatened should, require the offer to be reduced to writing, or to be made in some manner so as not to reach the jury. Whether the occasion demands this must generally be left to the discretion of the trial court, and we do not find in this record anything to warrant us in determining that the learned judge improperly excercised his discretion in permitting the offers to be made orally.

REVERSED AND REMANDED.

THE other commissioners concur.