WILLIAM K. MILLER ET AL., APPELLANTS, V. FRED M. RAY-
MOND ET AL., APPELLEES.

FILED DECEMBER 14, 1909.   No. 15,829.

1. **Negligence: SALES: LIABILITY OF SELLER.**   Where a retail merchant
at the suggestion of a customer sends for and sells him crude
petroleum to be used for dipping cattle, and the vendee specifies
the qualities said oil shall possess and the locality from whence
it shall be procured, and the vendor procures oil as directed, de-
ficient in one element only, he will not be liable in damages for
injuries caused by the application of said oil to the vendee's
cattle, where it is apparent that the vendee did not rely upon the
judgment or knowledge of the vendor, but upon statements
published by the government, and there is nothing in the record
to prove that the deficiency in the one ingredient described in
any manner injured or contributed to the injury of said cattle.

2. **Appeal: INSTRUCTIONS.**   Where the facts are established by uncon-
tradicted evidence and no verdict other than the one returned
can be sustained thereby, this court will not examine alleged
errors of the district court in giving or refusing to give instruc-
tions.

APPEAL from the district court for Scott's Bluff county:
HANSON M. GRIMES, JUDGE.  *Affirmed.*

*Sullivan & Squires, Eugene Burton* and *Wilcox & Hal-
ligan,* for appellants.

*Wright & Wright, H. C. Brome* and *Boyd & Barker,
contra.*

ROOT, J.

This is an action for damages flowing from injuries to
plaintiffs' cattle, alleged to have been caused by the use
of crude petroleum purchased from defendants for dipping
said live stock.  Defendants prevailed, and plaintiffs ap-
peal.

Plaintiffs allege, in substance, that at the time of the
transactions referred to in their petition they owned a
herd of cattle within territory covered by a proclamation

of the government directing that all cattle therein should be dipped to prevent the spread of mange; that the bureau of animal industry had issued a pamphlet recommending the use of crude petroleum for dipping cattle, describing the oil suitable for said purpose, and warning the public that oils not containing the qualities detailed in the pamphlet were dangerous and likely to destroy cattle dipped therein. Plaintiffs further allege that defendants possessed a copy of said pamphlet, which contained, among other things, the following: "It is to be observed that petroleum from different wells in the Beaumont region varies considerably, some wells producing a thick heavy oil as low as 15° gravity Baume, other wells producing a light oil 22° to 23° gravity, and some even higher, a production recently showing $29\frac{1}{2}$°. The bureau experiments with the different oils have shown that the thick heavy oil of low gravity is apt to irritate the skins of animals dipped in it, sometimes producing quite serious results, while the light oil is more bland and not liable to injure the animals. It is therefore important that only the light, higher gravity oil should be used for dipping purposes. In ordering, the kind of oil should be distinctly specified as Beaumont crude petroleum of $22\frac{1}{2}$° to $24\frac{1}{2}$° Baume, containing $1\frac{1}{2}$ to $1\frac{1}{4}$ per cent. sulphur, and that 40 per cent. will distil over when the oil is heated to a temperature of 200° to 300° C." Plaintiffs further charge that they applied to defendants for oil of the quality recommended in said pamphlet for the purpose of dipping their cattle, ordered about 800 gallons thereof, and later procured 700 gallons of the liquid from defendants; that they did not know the quality of the oil thus received by them, and could not by inspection or test determine that fact, but relied on the information and knowledge of defendants; that defendants did not order oil according to the directions contained in said pamphlet, and failed and neglected to furnish oil with the qualities specified in said circular, but delivered to plaintiffs other oil with destructive qualities; and that defendants knew

plaintiffs intended to use said liquid for dipping their cattle. Plaintiffs further plead that, believing the oil they received from defendants contained the qualities named in said pamphlet, they dipped their cattle in the liquid, to the injury of said stock and their own damage. The answer contains a general denial, and an allegation that the oil was ordered by defendants at plaintiffs' request and in accordance with their instructions. The reply is a general denial.

Alleged errors of law occurring at the trial and errors in the giving and refusing to give instructions are assigned and argued in the brief, but in our view of the case it will be unnecessary to discuss those assignments for the reason that the pleadings and evidence will not in our judgment sustain a verdict for plaintiffs. The action is not to recover for the difference in value, if any existed, between the oil ordered and that delivered to plaintiffs, nor are defendants charged with malice or fraud. The word warranty does not appear in the pleadings; but, from a statement made in the district court by plaintiffs' counsel, we conclude that the purpose of the suit is to recover upon an implied warranty that the oil was reasonably suitable for the purposes for which plaintiffs expected to use it. Plaintiffs in effect contend that a sale by description carries with it an implied warranty not only that the chattel shall answer to the specifications, but that it is suitable for the purpose for which it is bought. It is quite generally held that, where a manufacturer or dealer contracts to supply an article which he produces or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the vendor, an implied warranty exists that the goods shall be reasonably fit for the purposes for which they are ordered. *Jones v. Just*, 3 L. R. Q. B. (Eng.) *197; *Omaha Coal, Coke & Lime Co. v. Fay*, 37 Neb. 68. But, where the purchaser specifies the qualities, dimensions or characteristics which the article to be supplied shall

38

possess, the buyer necessarily relies upon his own judg-
ment or knowledge, and not upon the knowledge, judg-
ment or experience of the seller. *Milwaukee Boiler Co. v.
Duncan,* 87 Wis. 120.

In the instant case the oil was not an article manufac-
tured by man, but a product of nature. Plaintiffs and
defendants were in equal ignorance concerning the con-
stituents of the liquid. Defendants did not profess to
have any knowledge of the subject, and plaintiffs knew
that defendants had not been handling crude petroleum.
Plaintiffs and defendants alike received their information
from the government pamphlet. This circular informed
the reader that oil secured from different wells in the
Beaumont district was not of uniform quality. Three
specifications as to quality and one concerning locality
were given in the pamphlet and plainly constituted the
matters of description entering into the purchase and sale
of the oil in question. The oil should be ordered from
the Beaumont district. The evidence is undisputed and
unquestioned that the oil came from the Beaumont dis-
trict, and further that oil of the same grade had been
sold to the government for dipping cattle. As to quality,
the government recommended oil of a specific gravity of
from $22\frac{1}{2}°$ to $24\frac{1}{2}°$ Baume, containing $1\frac{1}{4}$ to $1\frac{1}{2}$ per cent. of
sulphur, and 40 per cent. of the oil should distil over
when heated to a temperature of 300° Centigrade. Plain-
tiffs caused samples of oil from their dipping tank to be
analyzed by Messrs. Sewell and Crowley, and specimens
taken from defendants' oil tank to be analyzed by Mr.
Emery, all expert chemists. Mr. Sewell testifies that the
specific gravity of the oil analyzed by him was 20.8°
Baume, 40 per cent. of the oil distilled over at a tempera-
ture of 300° Centigrade, and it contained but .56 per
cent. of sulphur. Mr. Crowley testifies that the specific
gravity of the oil analyzed by him was 21° Baume, 37 per
cent. of the oil distilled over at a temperature of 300°
Centigrade, and it contained only .25 per cent. of sulphur.
Mr. Emery testifies that one sample of the oil analyzed

by him had a specific gravity of 21.5° and the other 23° Baume; 40.6 per cent. of one sample and 40.5 per cent. of the other distilled over at a temperature of 300° Centigrade; one sample contained .58 per cent. and the other .89 per cent. of sulphur. Mr. Sewell testifies that crude petroleum, if exposed to the air, will evaporate; that thereby volatile elements escape, carrying with them sulphur contained in the oil, and that partial evaporation will increase the specific gravity of the remaining oil.

It will be noticed that the oil taken from defendants' tank conformed in density to the government recommendations, whereas that procured from plaintiffs' open dipping tank was slightly heavier than $22\frac{1}{2}$° Baume. Three out of four samples answered to the distillation test, and in but one particular did the oil fail to answer the specifications, a lack of less than 1 per cent. of sulphur. There is not a scintilla of evidence in the record to show that an addition of 1 per cent. or any other quantity of sulphur to the oil would have prevented injury to plaintiffs' live stock. In fact counsel for plaintiffs state in their brief: "It was not because the oil was heavier and contained less sulphur that rendered it harmful to plaintiffs' cattle, but was probably due to the presence of excessive quantities of certain caustics therein, such as carbolic acid, which probably could not exist or is never found in oil of the description contained in the order which produced the injury." The difficulty is, there is nothing in the record to support the argument. The analyses merely indicate that the oil contains sulphur. The other ingredients are not shown. Defendants did not undertake to furnish oil free from such caustics as may be found in crude petroleum. Under the circumstances of this case, when defendants delivered oil answering the description found in the government pamphlet, they had performed their undertaking, and, if the liquid did not come up to the specifications, it was incumbent on plaintiffs to prove that the imperfection was the proximate cause of the injury to their cattle. This they have not done, nor do

we believe it possible for them to do so. Verdicts and findings of fact must rest upon evidence, and not mere conjecture. Neither a court nor a jury ought to accept an argument for a fact, or for an inference logically to be drawn from facts proved in the case. *Leisenberg v. State*, 60 Neb. 628; *Babcock v. Fitchburg R. Co.*, 140 N. Y. 308.

The case was exhaustively tried in the district court. Plaintiffs have little, if any, just cause for complaint if it is conceded that upon any phase of the case they might recover, and, it appearing to us that upon no just application of the law to the facts can defendants be held liable, the judgment of the district court will be affirmed, without a discussion of the errors assigned.

AFFIRMED.