HICKMAN-WILLIAMS AGENCY, APPELLANT, V. E. L. HANEY, APPELLEE.

40 N. W. 2d 813

Filed January 19, 1950.   No. 32679.

*Herman & Van Steenberg,* and *Richard Van Steenberg,* for appellant.

*Frank J. Reed,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in replevin brought by the plaintiff to recover possession of a 1940 Oldsmobile sedan from E. L. Haney, defendant, who claims the right of possession by virtue of an artisan's lien as provided for in section 52-201, R. S. 1943. Possession of the automobile in question was not obtained by the plaintiff under its writ of replevin, and the action proceeded as one for damages under section 25-10,106, R. R. S. 1943, which provides in part as follows: "When the property claimed has not been taken, * * * the action may proceed as one for damages only, and the plaintiff shall be entitled to such damages as are right and proper; * * *."

The record shows without dispute that Ardith Gibson and her husband Dave Gibson executed and delivered to the plaintiff partnership a chattel mortgage on November 15, 1946, in the principal amount of $992.54, and interest as provided therein, the mortgage covering the automobile in question and other chattels owned by the mortgagors, payments to be made in installments the last payment due November 15, 1947. On the same day they executed and delivered to the plaintiff their negotiable note in the same amount.

The principal issue tried in the district court was whether the plaintiff, claiming under a prior recorded chattel mortgage, had waived or subordinated its lien as against the artisan's lien holder in possession of the automobile. The jury returned a verdict finding for the plaintiff; that on June 29, 1948, the date the replevin

action was filed in justice court, plaintiff was entitled to the possession of the automobile; fixed the value of the same at that date in the sum of $400; and assessed damages in favor of the plaintiff and against the defendant in the sum of one cent. The defendant filed a motion for new trial, setting forth the grounds for the same as provided for by section 25-1142, R. R. S. 1943. Upon hearing of the defendant's motion for new trial, the trial court sustained the motion. From this ruling the plaintiff appealed to this court.

We summarize the defendant's evidence first. The defendant testified as follows: In the latter part of April 1947, Dave Gibson brought the automobile in question to the defendant's garage at Morrill, Nebraska, requested the defendant to completely overhaul it, and stated that he could take all summer to complete the job. In about two weeks the defendant commenced work on the automobile. He found that the motor was completely burned up, and a major overhaul was required. He received word that there was a mortgage on the car, and he confronted Gibson with this fact. Gibson told him the plaintiff held a chattel mortgage on the car. The defendant immediately called Mr. Hickman of the plaintiff partnership. Hickman came to the defendant's garage the next day and they looked over the car. The defendant showed Hickman the car with the head and pan removed, and they talked about the repairs needed. Hickman inquired of the defendant what arrangements had been made for payment, and the defendant told him that Gibson was to pay for it, but that in the event he did not, the plaintiff should pay for it. The motor repair was discussed and the job figured $225 to $250. Hickman stated that the car was not worth anything in its present condition and might as well be repaired so that they could get what they could out of it. He further stated that the plaintiff held additional security on the Gibson mortgage which would help to get the money for the repairs and pay the mortgage.

In the latter part of July or the first part of August the defendant pulled the motor, checked it, and found the "hydramatic" transmission in bad condition. He called Hickman, informed him of the condition of the car and of the lack of equipment that he had to repair the transmission, and stated that it would have to be taken to a garage where such work was done. He also informed Gibson of the condition of the transmission. The car was taken to a garage in Torrington, Wyoming, and returned with the transmission repaired. The cost amounted to approximately $90. The defendant talked to Hickman about the cost of the transmission. This was in the fore part of September 1947, and the work was done at Hickman's request.

There was other work necessary to place the automobile in proper repair and in a salable condition, all done, according to the defendant's testimony, by Hickman's instruction. The repairs and equipment, when the car was finished on February 15, 1948, amounted to $609.13, and this bill was submitted to Hickman. Hickman suggested that the defendant file an artisan's lien and proceed to foreclose it, stating that the plaintiff did not desire to foreclose its mortgage against Gibson because it was a blanket mortgage.

The day before the sale of the car was to be had, the defendant notified Hickman that the car would be sold June 11, 1948. Hickman, together with his partner Williams and a Mr. Ware, came to the sale. There were other bidders present. Bidding was had, and the car was bought by Ware. Hickman requested Ware to make a check for $900 to the defendant and give it to him, then the parties left. The defendant's wife presented the check for payment and it was turned down. The defendant presented the check and it was turned down. He went to Hickman's office and Hickman told him that the check was to be made to the plaintiff, and the plaintiff in turn would give the defendant its personal check for the deal so the car could be properly financed by the

plaintiff in favor of Ware. They then proceeded to an attorney's office to complete the transaction, and Hickman refused to go through with it and write the check as he agreed to do.

At no time did Hickman tell the defendant that the car was mortgaged, and at the sale neither Hickman nor Williams, his partner, asserted to the bidders that they held a chattel mortgage on the car, but permitted Ware, a man they brought with them, to bid in the car under the circumstances as heretofore appears. The defendant was to take his money out of the check and give the balance to the plaintiff. The defendant then replevined the car from Ware who had possession of it.

After the check was turned down Hickman told the defendant that their mortgage preceded his artisan's lien.

There is some evidence that the defendant was to carry the Gibson account. He desired the money for the parts that had been placed in the automobile in the amount of $450, as he was acquiring an automobile agency and needed the money. The agency did not want an account of that nature carried by the defendant. The Gibsons were unable to make any payments either for parts or labor done on the automobile.

The defendant's wife testified with reference to the check transaction; that during the sale neither Hickman nor Williams ever announced that they held a mortgage on the car; and that nothing was received in payment on the artisan's lien.

The defendant also testified that he offered $250 for the car before he started to work on it, and that the value of the car after the work had been completed was in the amount of $750. There is evidence of the plaintiff that before the repairs were made on the car it was appraised by a dealer at $500, which he offered to pay for it.

A witness testified that in November 1947, he saw Hickman in Haney's garage, and Hickman and Haney were discussing the condition of the car. Haney told Hickman the car was not worth much in its present

condition and needed the front part repaired, and Hickman said that he agreed with him and for him to go ahead and fix it. Haney said: "If I find it needs anything else I will call you."

Hickman's version of the dealings with the defendant are in substance as follows: After testifying with reference to the Gibson mortgage, he further testified that he was told by a party that Gibson had taken the automobile to the defendant's garage. Having this information, the next day he and Williams went to the defendant's garage, contacted Haney, and told him that they had come to notify him that they had a mortgage on the car he was working on. They looked the car over. It was torn down and the parts were on the floor. They told the defendant he would have to do the work subject to the plaintiff's mortgage. The defendant replied that he knew the plaintiff had a mortgage on the car; that Gibson had made arrangements to pay the bill out of the fall crop by borrowing on it, or by sale; and that if the amount was not paid the car was worth the amount of the plaintiff's mortgage and his bill. The defendant told them the cost to repair the automobile would be $315. He originally told Gibson the amount would be $225. This was prior to the time he discovered the transmission was in bad condition. Hickman denies that he at any time authorized the repairs made by the defendant on the automobile, or guaranteed payment for the same in any manner.

Williams, on his visits to the defendant's garage, watched the progress of the repairing of the automobile, but claimed to have little to do with the transaction.

The amount due on the chattel mortgage lien as evidenced by the note is not computed in the record, but under the evidence it would be in the amount of approximately $900 at the time of trial.

Williams and Hickman admitted that they made no announcement to the bidders at the sale under the artisan's lien that the plaintiff held a chattel mortgage of

record on the automobile which was prior to the artisan's lien.

The plaintiff made demand on the defendant for the return of the automobile after the defendant had replevined it from Ware.

The plaintiff assigns as error that the trial court erred in sustaining the defendant's motion for new trial and the judgment entered thereon for the reason that there was no tenable ground therefor, and the trial court abused his discretion in such respect. In determining this assignment of error we refer to certain sections of the statute and the instructions given by the trial court.

Section 25-1094, R. R. S. 1943, requires among other matters that the affidavit in replevin, in subdivision (2) of said section, must show that the plaintiff is the owner of the property, or has a special ownership or interest therein, stating the facts in relation thereto, and that he is entitled to the immediate possession of the same; and in subdivision (3) of said section that the property is wrongfully detained by the defendant.

Section 52-201, R. S. 1943, provides for a retaining lien in substance as follows: Any person who repairs or in any way enhances the value of any automobile at the request of or with the consent of the owner, or owners thereof, shall have a lien on such automobile while in his possession, for his reasonable or agreed charges for the work done or material furnished, and shall have the right to retain such property until such charges are paid.

In the instant case the plaintiff claims a special interest in the automobile in question by virtue of its chattel mortgage duly recorded. The defendant claims a special interest in the automobile in question by virtue of his artisan's lien, under section 52-201, R. S. 1943. The owner of the property is not a party to this action.

Section 25-10,106, R. R. S. 1943, insofar as this appeal is concerned, is heretofore set out.

The trial court instructed the jury in instruction No. 9, that the action was commenced by the plaintiff as a

replevin action to obtain possession of the motor vehicle involved herein, the motor vehicle was not obtained, and the action proceeded upon the plaintiff's petition to enforce the collection of the value of the plaintiff's interest in the motor vehicle, and that under the issues of the case the right of the plaintiff to collect the value of its interest in the motor vehicle depended upon the question of whether or not the plaintiff was entitled to possession of the motor vehicle under its mortgage at the time of the commencement of the action.

In instruction No. 7, the court instructed the jury that the burden of proof was on the plaintiff, before it could recover on its cause of action, to prove that on June 29, 1948, it had a special property in and was entitled to the immediate possession of the automobile described in its petition, and if the plaintiff established the above proposition by a preponderance of the evidence, *"then in your verdict you will find for the plaintiff and assess its damages in such sum as you shall determine them to be, and further assess its damages in such sum as you shall determine for the wrongful detention of the same by the defendant* unless you find from the preponderance of the evidence plaintiff has subordinated its lien to the artisan's lien of defendant upon which you are hereinafter instructed." (Emphasis supplied.)

In instruction No. 8, the court instructed the jury that the automobile mentioned in the instructions "is in the possession of the defendant. You are further instructed that the plaintiff has introduced no evidence on the question of damage for the unlawful detention of said property by the defendant. Therefore, if you find for the plaintiff you will assess its damages for the unlawful detention of said automobile in the sum of one cent."

It will become apparent later in the opinion that instruction No. 7 was erroneous on the measure of damages when the person claims a special interest in the property only. The measure of damages for unlawful detention of property in replevin as given therein is

also erroneous, and this portion of the instruction was apparently based on section 25-10,105, R. R. S. 1943, which provides in part that in all cases when the property has been delivered to the plaintiff, where the jury shall find for the plaintiff, on an issue joined, they shall assess adequate damages to the plaintiff for the unlawful detention of the property.

Instruction No. 7 on unlawful detention of the property is in direct conflict with section 25-10,106, R. R. S. 1943, which applies to the instant case, and is in conflict with instruction No. 8 on the measure of damages for unlawful detention, and these instructions are confusing. The proper measure of damages applicable to the instant case is shown by the following cited authorities.

In Creighton v. Haythorn, 49 Neb. 526, 68 N. W. 934, the court held: "Where the defendant in an action of replevin claims a special interest only in the property in controversy by virtue of a mortgage or other lien, his measure of damage, in case the property cannot be returned, is the amount of his lien with interest and costs, within the value of the property." The opinion cited Welton v. Beltezore, 17 Neb. 399, 23 N. W. 1; Cruts v. Wray, 19 Neb. 581, 27 N. W. 634; Gates v. Parrott, 31 Neb. 581, 48 N. W. 387, and was followed in Jackson v. Arndt-Snyder Motor Co., 122 Neb. 276, 240 N. W. 279.

The situation would be no different in the instant case as to the measure of damages, for the reason that the plaintiff claims a special interest in the property which was not obtained under its writ of replevin, by virtue of its chattel mortgage, and the foregoing cited cases constitute the measure of damages that should have been given by the trial court under the pleadings and factual situation in the instant case.

In the case of Omaha Coal, Coke & Lime Co. v. Fay, 37 Neb. 68, 55 N. W. 211, it was held: "Where the law provides a definite measure of damages the court should instruct the jury specifically how the damages should be assessed, and an instruction stating a general

principle in the admeasurement of damages, broader than is applicable to the particular case presented, and not qualified by other instructions, is erroneous."

It is obvious from a review of the instructions on the measure of damages in the instant case that the admeasurement of damages in instruction No. 7 is broader than is applicable to the particular case presented, and the proper measure of damages cannot be ascertained or qualified by the other instructions given by the trial court from a review thereof.

In replevin, damages for the detention of the property are recoverable only in case of a return. If the property is not returned the measure of damages is the value of the property as proved, together with lawful interest thereon from the date of the unlawful taking. See Oak Creek Valley Bank v. Hudkins, 115 Neb. 628, 214 N. W. 68.

"It is the duty of the trial court correctly to instruct the jury as to the proper method of determining the amount of recovery, and this it should do of its own motion and without request." 64 C. J., Trial, § 557, p. 624.

As stated in Kimball v. Lanning, 102 Neb. 63, 165 N. W. 890: "It is reversible error for the trial court to fail to instruct the jury respecting the law that is applicable to the material issues that are raised by the pleadings and that are supported by the proof." See, also, Citizens Nat. Bank v. Sporn, 115 Neb. 875, 215 N. W. 120; Ellis v. Union P. R. R. Co., 148 Neb. 515, 27 N. W. 2d 921.

"Where an instruction is so worded as necessarily to leave the jury to uncertain conjecture as to the meaning, and therefore liable to lead the jury astray in their consideration of the case, it is good ground for a new trial." City of Crete v. Childs, 11 Neb. 252, 9 N. W. 55.

"Primarily the office of a motion for a new trial is to afford the court an opportunity to correct errors in its own proceedings without subjecting parties to the ex-

pense and inconvenience of appeal or petition in error."
Weber v. Kirkendall, 44 Neb. 766, 63 N. W. 35.

"The power of judicial discretion authorizes and requires the court to determine the question as to whether or not a legal reason exists for the granting of a new trial. If a legal reason exists and the complaining party makes his application in writing within the time fixed by statute, the court has no discretion in the matter and the motion must be sustained. * * *" Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772.

It is evident from a review of the instructions given by the trial court as hereinbefore mentioned, that the same are conflicting and furnish no proper guide to the jury on the measure of damages. Under the authorities a legal reason existed for granting a new trial, and the trial court did not err in so doing.

The plaintiff contends that under the verdict its recovery was within the value of the property and much less than the value of plaintiff's interest in such property by reason of its chattel mortgage and the defendant was not prejudiced thereby, also that on the question of unlawful detention, the verdict in the amount of one cent was not prejudicial to the defendant for the reason that the plaintiff would be entitled to more than that amount under the law, and the court could grant a remittitur in the amount of the damage so found for unlawful detention.

The foregoing cited authorities adequately dispose of the plaintiff's contention in such respect, as hereinbefore explained.

The defendant cross-appealed, contending a verdict should have been directed for him. In view of this contention we have set out the evidence in detail, and it is in conflict on the issues presented. The cross-appeal must be denied. The question was one of fact for the jury to determine as to whether or not the plaintiff subordinated its chattel mortgage lien to the artisan's lien of the defendant.

For the reasons given in this opinion the judgment of the trial court sustaining the defendant's motion for new trial is affirmed.

AFFIRMED.