## 25204.  SHERMER *v.* CROWE *et al.*

DECIDED JUNE 8, 1936.

*Etheridge, Belser, Etheridge & Etheridge,* for plaintiff in error. *Hewlett & Dennis,* contra.

SUTTON, J.  The plaintiffs, G. E. Crowe and minor children, brought suit against Shermer and the General Oil Company, for damages on account of the death of their wife and mother, alleged to have been caused by the negligence of the defendants in selling

a dangerous substance as kerosene, which was a "flash-point lower than 115 degrees F," in violation of the State law, the same being an inflammable and explosive liquid, without giving any caution or warning thereof, and which was wholly unsuited for the uses and purpose for which kerosene was customarily used. The jury returned a verdict in favor of the plaintiffs against both defendants for $13,041.67. Shermer's motion for new trial was overruled, and he excepted, naming the defendant oil company as a defendant in error in the bill of exceptions. The evidence on the trial of the case authorized the jury to find the following facts: Shermer was engaged in retail and wholesale of kerosene and other petroleum products. In the rear of his store he maintained four large storage-tanks. Two of the tanks were divided into two compartments, and two into three compartments. Shermer retailed kerosene from hand-pumps in the front of his store. All trucks and wagon tanks drove to the rear of the store and loaded directly from these storage-tanks. He purchased kerosene and stored it in one of his storage-tanks. The State oil inspector inspected this kerosene, and found the same to be a flash-point lower than 115 degrees Fahrenheit, which it was a violation of the law to sell, and rendered the same more easily inflammable and explosive than proper kerosene was; and this officer confiscated and sealed said tank of kerosene. The tank-truck of the General Oil Company loaded with kerosene at Shermer's rear tanks; and it was earnestly contended that he was not given any kerosene from this faulty tank, and that all other kerosene was up to the standard required. This tank-truck sold and delivered kerosene to small retail stores. Mrs. Harris owned the Peeples Street Market, and purchased exclusively all kerosene that she sold from said oil company's truck. On May 14, 1932, Mrs. Harris purchased some kerosene from said truck of the oil company, and the same was delivered to her. G. E. Crowe, husband of the deceased, lived in the house with Godfrey, who worked for Mrs. Harris. On May 14, 1932, Godfrey purchased four gallons of this kerosene from the market, and it was carried by Crowe to Godfrey's home. On May 16, 1932, Leila Crowe, wife of G. E. Crowe, preparatory to heating water, placed some charcoal in a charcoal bucket, poured about one-half teacup of this kerosene out of the can upon the charcoal in order to make it burn freely, set the oil can down about eighteen inches away

from the charcoal bucket, and then struck a match on the side of the bucket; whereupon the charcoal-soaked kerosene caught fire and blazed up, igniting the adjacent oil-can, which exploded. The fire spread and burned the house, and Leila Crowe received burns from which she died that afternoon. It was contended by Shermer that Mrs. Crowe had previously set fire to the charcoal; and it not catching up soon enough for her, ten or fifteen minutes later she poured the kerosene over the hot coals, and this caused the explosion. An investigation was made by the State oil chemist the next day, and he discovered that the kerosene in the tank at Mrs. Harris's market, from which came the kerosene that caused Mrs. Crowe's death, was of an improper grade, the same as that which had been condemned at the place of business of Shermer; whereupon all kerosene bought by the oil company from Shermer was taken up by it and destroyed. There was evidence that had the kerosene been of the proper grade it would not have exploded in the manner in which the kerosene exploded in this case, or not so quickly and easily as this kerosene exploded.

■ The evidence authorized the jury to find that the kerosene causing the explosion that resulted in the death of Mrs. Crowe was sold by Shermer to the defendant oil company, and in turn sold by it to the merchant from whom it was purchased for use by Mrs. Crowe, that it could have come from no place other than the place of business of this defendant, and that this defendant had a quantity of below-grade kerosene on hand at the time. The fact that Mrs. Crowe attempted to start a fire in a charcoal bucket with such kerosene was not such an unusual and dangerous use thereof as would bar, as a matter of law, a recovery for her death, when it exploded. *Standard Oil Co.* v. *Reagan*, 15 *Ga.* App. 571, 574 (84 S. E. 69). There was evidence that had this kerosene been up to the standard required by the law of this State, it would not have ignited and then exploded as it did. The evidence supported the verdict in favor of the plaintiffs. The amount of the verdict was not attacked as being excessive.

■ Our statutes provide that it shall be a misdemeanor for kerosene oil below a certain standard to be sold for cooking, heating, or power purposes. Ga. L. 1927, pp. 279, 283. The judge in effect charged the jury that if the defendant sold "kerosene oil for use or intended to be used in the manner and way in which kero-

sene is usually used," that was below such standard, this would be a violation of the law; and that if the jury believed from the evidence that the defendant did sell this grade of kerosene, he would be guilty of negligence per se by so doing. Where the violation of a penal statute by the defendant is the proximate cause of the injury complained of, the defendant is guilty of negligence per se authorizing a recovery. *Platt* v. *Southern Photo Material Co.*, 4 *Ga. App.* 159 (60 S. E. 1068); *L. & N. R. Co.* v. *Hames*, 135 *Ga.* 67 (68 S. E. 805). It would not be a violation of the law for the defendant to sell kerosene that was below such standard, for use in eradicating mosquitoes, and for other kindred purposes. However, there was no question or issue in this case that the kerosene alleged to have been sold by Shermer to the merchant from whom it was purchased by the brother-in-law of the husband of the deceased was sold for any purpose other than cooking, heating, or power purposes, and it was being used to start a fire for the purpose of heating water when the explosion that resulted in the death of Mrs. Crowe occurred. It is a matter of general knowledge that high-grade kerosene is usually and customarily used for cooking, heating or lighting purposes; and while the judge's charge was not in the exact language of the statute, under the facts of this case it did not tend to extend this statute, which is limited to the sale of kerosene for the purposes therein specified, to the sale of kerosene that is to be used for cleaning, mixing with paint, eradicating insects, and kindred uses, for which use an inferior grade of kerosene may be used. Furthermore, under the facts of this case, this charge did not tend to harm or prejudice this defendant's case in any manner. He contends that he did not sell any kerosene that was of such inferior grade, and the plaintiffs contend that he did sell such grade of kerosene. If he was selling kerosene to the public generally, without particularly specifying that he was selling such kerosene solely for the purpose of cleaning, eradicating insects, mixing with paints, and other uses to which inferior kerosene may be put, it would be presumed that he was offering for sale and selling kerosene for use as it is generally used, that is, for cooking, heating, or lighting and power purposes, and that he was selling kerosene in compliance with the law as to its grade; and the judge's charge was not error because it did not appear that Shermer sold the kerosene to the oil company, which

was put in its tank-truck and delivered to the merchant from whom was bought the kerosene that caused Mrs. Crowe's death, for cooking, heating, or power purposes. It is undisputed that Mrs. Crowe was using this kerosene for heating purposes in attempting to start a fire therewith, and that this kerosene was sold to the merchant and sold by the merchant as a retailer as kerosene for common and general use. In *Standard Oil Co.* v. *Reagan,* supra, this court held that "it must be conceded that commercial kerosene is a substance in such general, if not universal, use that the term 'ordinary kerosene' has a meaning almost as well understood as the terms 'ordinary wood,' or 'ordinary water,' or 'ordinary air' would have. So that we must assume that this expression meant kerosene of the grade and quality ordinarily sold for the general use of the public for illuminating purposes, and of the kind and quality with which the witness and the public at large were familiar. Besides, we must presume, in the absence of anything to the contrary, that 'ordinary kerosene,' being the kerosene sold in the open market, is kerosene of lawful grade, and hence of the quality which Reagan sought to purchase, and which the other persons making the tests had actually purchased, both from the Standard Oil Company and from other manufacturers of oil."

The court charged the jury that "in the event you find from the evidence that the law as just given you with respect to the selling or vending of kerosene was violated by the defendant Shermer, and you further find that such violation was the proximate or one of the proximate causes of the alleged damage to have been sustained by the plaintiffs, the court charges you that it would be no excuse or defense for the defendant Shermer to show that he did not know that such substance was dangerous or unsuited for the use for which kerosene oil is customarily used. It would likewise be no defense for him to show that he did not know that the substance would flash at a temperature below 115 degrees Fahrenheit." Shermer assigns this charge as error, in that while there may be several contributing factors, there can be but one proximate cause of an injury, and by this instruction the jury were led to believe that there were more than one proximate cause of the death of plaintiff's wife; and if they believed that the sale by Shermer of illegal kerosene was one of the contributing factors of her death, the jury could find a verdict for the plaintiff against this defend-

ant, who under the evidence contended that the proximate cause of her death was the manner and method employed by her in attempting to start a fire in a charcoal bucket by pouring kerosene thereon, there having previously been a fire therein and the charcoal and bucket were hot, and that this caused the explosion; and that the jury could and may have believed that her act in so doing was the proximate cause of her death, which would have barred a recovery therefor by her husband but for the fact that they were charged that there could be more than one proximate cause thereof, or that they could by this instruction find that the defendant was liable merely by violating this law, and at the same time believe that her death was actually caused by the manner in which she started the fire. This charge was not error for any of the reasons assigned, and was not calculated to lead the jury to the impression as contended by Shermer. There may be more than one proximate cause of an injury. *Rollestone* v. *Cassirer*, 3 *Ga. App.* 161 (59 S. E. 442); *A. C. L. R. Co.* v. *Daniel*, 8 *Ga. App.* 775 (70 S. E. 203).

■ The court did not err in charging the jury that the "defendants, and each of them, · . also contends that . . Mrs. Crowe failed to exercise ordinary care to protect herself against any negligence that may have occurred on the part of the defendants." The excerpt from the charge on this question was not calculated to instruct the jury that the defendants admitted that they were guilty of the negligence charged against them. Shermer denied that the deceased exercised ordinary care at the time she received the injuries resulting in her death, and alleged that she was guilty of such contributory negligence as to bar a recovery, and that her acts were the proximate cause of her death. This instruction was not an incorrect statement of the law in so far as it went, or an incorrect statement of the contentions of this defendant. See *Freeman* v. *Nashville &c. R. Co.*, 120 *Ga.* 469 (47 S. E. 931), for the correct rule. The charge on the contentions of the parties, on the question of negligence, failure to exercise ordinary care on the part of the decedent, and contributory negligence, was full, complete and correct. After giving the excerpt complained of here, the court charged that Mrs. Crowe must have been in the exercise of ordinary care to protect herself against any negligence that may have occurred on the part of the defendants or either of

them; that if she could by the exercise of ordinary care have avoided the consequences to herself of the defendant's negligence, "if there was such negligence, then there could be no recovery in this case," and that the "duty to exercise ordinary care does not arise until the injured party knew, or in the exercise of ordinary care ought to have known, of the negligence, or such negligence is apparent, or by the exercise of ordinary care should have been apparent, if negligence there was."

■ In the motion for new trial Shermer complains that the court incorrectly charged on the question of damages to be awarded to the husband and minor children of the deceased; that, after instructing the jury that the measure of damages would be the full financial value of the life of the deceased, the court in effect charged that the jury should ascertain the annual earnings of the deceased, multiply this by the number of years she would likely live, thus arriving at the gross value of her life, and that this gross value should then be reduced to its present cash value and awarded as damages to the plaintiffs, if the jury believed that they were otherwise entitled to recover. The charge was not subject to the criticisms directed against it. The charge on this subject, as a whole, was fair, and complete. Code of 1933, §§ 105-1302, 105-1306, 105-1308; *Standard Oil Co.* v. *Reagan,* supra.

■ The court did not err in the charge or recharge on the question of the verdicts the jury could return, in that the jury were not given the provisions of the Code, § 105-2011, that "Where several trespassers are sued jointly, the plaintiff may recover against all, damages for the greatest injury done by either. But the jury may, in their verdict, specify the particular damages to be recovered of each, and judgment in such case must be entered severally." The court instructed the jury that if they found for the plaintiffs against the defendants, their verdict should be, "We the jury find for the plaintiffs" so much money. The Code section applies to actions against joint trespassers for injury to property, and not an action against joint tort-feasors for damages on account of their negligence. In a case of this character "different sums can not be assessed against different defendants." *McCalla* v. *Shaw,* 72 *Ga.* 458; *Hunter* v. *Wakefield,* 97 *Ga.* 543 (25 S. E. 347, 54 Am. St. R. 438); *Glore* v. *Akin,* 131 *Ga.* 481, 482 (62 S. E. 580), and cit. The present action by the husband

and minor children for damages on account of the death of the wife and mother was not an action for property damage, but a personal-injury action. See *Atlantic, Valdosta &c. R. Co.* v. *McDilda*, 125 *Ga.* 468 (54 S. E. 140, 114 Am. St. R. 240); *King* v. *Patellis*, 181 *Ga.* 157 (181 S. E. 667); *Patellis* v. *King*, 52 *Ga. App.* 118 (182 S. E. 808).

■ The court fully and correctly charged the jury on the question of contributory negligence by the deceased, and it was not error to fail to charge again the law applicable to this defense, upon the jury being recalled and requesting the court for additional instructions as to the "verdicts to be returned," and as to "that part of the charge . . that relates to the responsibility of the two defendants," the court having recharged the jury in compliance with their requests.

■ It follows that the judge did not err in overruling Shermer's motion for new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*