VIRGINIA A. TATE, ADMINISTRATRIX OF THE ESTATE OF WENZL J. SEIDL, DECEASED, APPELLANT, V. DONNA BORGMAN, APPELLEE.

92 N. W. 2d 697

Filed November 7, 1958. No. 34415.

*Healey, Davies, Wilson & Barlow, Kenneth Cobb,* and *Chambers, Holland, Dudgeon & Hastings,* for appellant.

*Marti, O'Gara, Dalton & Sheldon,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages arising from an automobile collision which occurred February 10, 1955, between a taxicab driven by Wenzl J. Seidl and a car driven by Donna Borgman. Seidl sued for personal injury and property damage. He died February 11, 1956. The action was revived in the name of the administratrix, and a second cause of action alleged on the

basis that death was the result of the injuries following the accident.

The defendant cross-petitioned for personal injury and property damage. Issues were made and trial was had resulting in a verdict and judgment for the defendant.

Plaintiff appeals, assigning as error the failure of the trial court to submit the issue of excessive speed of defendant's automobile to the jury; in striking the testimony of an expert witness regarding reaction time and speed as shown by skid marks; and in the giving of three instructions.

We reverse the judgment and remand the cause for further proceedings.

The accident occurred on West "O" Street about dusk at 5:30 p.m. At the point of the accident West "O" Street is a four-lane highway divided by traffic islands. At the point of the accident there is a 65-foot opening between the traffic islands to permit cross traffic. Immediately to the north of this opening and on the north side of the outer westbound lane is a driveway opening into the grounds of a garage, called herein the west drive. To the east and north of that is the garage. There is then a driveway leading to the garage called the east drive, and farther east of that is a second drive leading to a motor court. The center of this drive is 67 feet east from the center of the east drive.

The plaintiff's evidence is to the effect that Mr. Seidl had driven into the garage areaway through the west drive, had unloaded a passenger at the garage, and when last seen was in the east drive turning west. Plaintiff's contention is that Seidl drove west on the highway to the cross traffic opening and was making a left turn into the cross traffic lane when defendant's car ran into his taxicab.

Defendant's evidence is that she was driving west on "O" Street at about 35 or 40 miles per hour when she came up behind a slow-moving westbound car in the outer lane, turned to pass it, and when alongside she saw

the Seidl cab pull "right straight across" out of the west drive. There is ample evidence in the record that at that time the two cars were approximately 150 feet apart and that the distance between them was closed by the movements of the defendant's car. Defendant testified that "it" (the cab) was so close "I didn't have time enough to stop." Defendant also testified that "just before" she applied her brakes she "imagined" she was traveling about 35 to 40 miles per hour. Defendant further testified that she had turned a little toward the island when the collision occurred.

The undisputed evidence is that the defendant's car skidded a distance of 61 feet before the impact. The evidence also is that the damage to defendant's car occurred on the right front fender, light, and grill, causing $550 damage. The cab was hit with the greater impact on the left rear door, pushing it in. The cab was pushed sideways a distance of 10 feet and came to rest in a north and south position across the inner westbound lane and a line between the traffic islands. Defendant's car stopped almost at the point of impact.

Defendant further testified that she was thrown forward by the impact; her mouth hit the steering wheel; her teeth cut through her lip; one knee hit the ignition key and one hit the hand brake, bending both key and brake; her head hit the steering wheel; and her shoulder hit the door, all causing serious injuries.

The evidence is that the pavement was concrete, as distinguished from black-top, in "normal" condition and free of ice or snow. There is evidence of some gravel on the pavement alongside the traffic island. Plaintiff offered an expert witness on the questions of speed as shown by skid marks and speed as shown by reaction time. The witness testified that he had been a police officer engaged in traffic matters for 10 years or more; that he had had specialized training at Northwestern University in determining stopping distances of cars at various speeds; that he had made experiments testing

the formula for estimating speed from skid marks; that his experiments showed the formula to be true; that the type of a car makes no difference; that the weight of a car makes no difference; that the grade and condition of the pavement have to be considered; that the condition of the tires on good pavement makes no appreciable difference; and that the type of brakes makes no difference after the wheels are sliding. He testified that he was familiar with the surface of the West "O" Street pavement; that he was assuming it was dry; that it had a 1 percent uphill grade; and that he assumed the condition of the pavement to be as shown in the pictures in evidence. On that foundation he was allowed to testify as to stopping time and reaction time.

The witness testified that a car "at that particular location" traveling at 35 miles per hour should slide approximately 59 feet; that at 40 miles per hour the slide should approximate 77 feet; that at 45 miles per hour the slide should be in excess of 95 feet; that at 50 miles per hour the slide should be 110 feet to 112 feet; and that at 60 miles per hour the slide should be approximately 117 feet. From this evidence, considering the 61 feet of skid marks before the impact, the distance of 10 feet the cab was shoved west when in a sidewise position, the damage to the cab and car, and the force with which defendant was thrown about the car, it is obvious that the jury could properly have inferred that defendant's speed was well in excess of the 40 miles per hour she testified to when the brakes took hold and locked the wheels in skid position.

The witness also testified that by reaction time he meant the time it takes a driver, after he realizes a hazard exists, to take his foot from the accelerator and start applying the brake. He testified that, based on experiments conducted, the reaction time varied from slightly over half a second to a second and that the reaction time for the average person is recognized to be three-quarters of a second. He testified that the average person's re-

action time with a car going at 35 miles per hour would be 38 feet; at 40 miles per hour about 44 feet; at 45 miles per hour about 49 feet; at 50 miles per hour about 55 feet; and at 60 miles per hour the reaction time would be about 66 feet. Now remembering that the jury could have found a possible reaction time here of about 90 feet of travel, it is obvious that the jury could have found that the defendant's speed was well in excess of the 35 to 40 miles per hour she "imagined" she was going when danger became apparent.

After the above evidence had been given to the jury the witness was then asked what he regarded the condition of the roadway was from the photographs in evidence. He replied that the pictures did not tell him too much, and that he was going more on his personal knowledge. The court, then, on motion of the defendant, struck all of the above recited testimony from the record and instructed the jury not to consider it.

Plaintiff assigns the exclusion of the evidence as error. Defendant argues here that it was properly excluded for lack of foundation.

Patently the testimony of the witness as to reaction time could not have been involved in the statement of the witness above recited. We see no basis for rejecting the testimony as to reaction time because of lack of foundation. It was ample.

We have held: A qualified expert, upon laying a proper foundation, may give his opinion as to the speed of an automobile, based on the length of skid marks made by it when brakes were applied. McKinney v. Wintersteen, 122 Neb. 679, 241 N. W. 112.

In Koutsky v. Grabowski, 150 Neb. 508, 34 N. W. 2d 893, we held: "Various factors, such as skid marks, distance traveled after impact, and force of impact, constitute pertinent evidence in arriving at an estimate of the rate of speed of an automobile, either by those involved in an accident or those in authority investigating

the accident immediately thereafter. See 5 Am. Jur., Automobiles, § 630, p. 850."

We quoted this rule with approval in Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

Defendant to avoid the effect of the rule argues that the expert witness here was neither involved in the accident, nor was he one in authority investigating the accident immediately thereafter.

An examination of the text cited in Koutsky v. Grabowski, *supra,* shows that the rule is: "Various factors, such as skid marks, distance traveled after impact, force of impact, etc., are pertinent in arriving at an estimate of the rate of speed of an automobile." 5 Am. Jur., Automobiles, § 630, p. 850.

It is quite evident in Koutsky v. Grabowski, *supra,* we were applying the rule to the evidence of that case and not limiting the application of the rule. Further, in Burhoop v. Brackhan, 164 Neb. 382, 82 N. W. 2d 557, we said: "This rule relates specifically as to what facts may be shown as they can be said to bear on the question of speed, * * *." The rule is not limited as defendant contends.

Defendant further contends that the expert was not asked to relate his testimony into an estimate of the speed of the defendant's car under the conditions existing at the time of the accident. He was not required to do so to make his evidence admissible.

Defendant further contends that the exclusion of the evidence was not prejudicial because in any event it did not show a speed in excess of 50 miles per hour and that under the issues presented speed of less than 50 miles per hour would not constitute negligence. We dispose of that contention later herein contrary to the contention of the defendant in connection with the failure of the trial court to submit the issue of excessive speed to the jury.

Neither party discusses here the striking of the evidence as to reaction time as a separate question from the

evidence as to skid marks showing speeds. Obviously the foundational requirements are materially different.

In Vale v. Noe, 172 Wis. 421, 179 N. W. 572, the court held: "It is a matter of common knowledge that it requires an appreciable time for the mind and muscular system to act."

In State v. Belle Isle Cab Co., 194 Md. 550, 71 A. 2d 435, the court said: "It is obvious that, no matter how quick might have been the reflexes of the driver, the car did travel *some* distance while the driver was putting on his brakes and while the brakes were taking hold with sufficient grip to skid the wheels." See, also, Yeaman v. Storms, 358 Mo. 774, 217 S. W. 2d 495, and Smith v. St. Louis Pub. Serv. Co. (Mo. App.), 252 S. W. 2d 83, where the court took judicial notice of reaction time.

In Edwards v. Dixon (Mo. App.), 298 S. W. 2d 466, the court, in the absence of evidence, took judicial notice that three-fourths of a second is required after occasion to stop arises for a driver to apply the brakes. See, also, Ashbrook v. Cleveland Ry. Co., 33 Ohio Law Abstract 497, 34 N. E. 2d 992, where the court held: "It is a matter of common knowledge also that the so-called reaction time of the average man (that is the time elapsing from the moment one sees danger until the moment when he can actually get into action to avoid it) is about three-quarters of a second."

The expert witness here took a fact of common knowledge (reaction time) and gave the jury a measuring stick whereby reaction time could be translated into speed per hour if it wished.

We find the evidence as to speed as shown by skid marks and speed as shown by reaction time was properly admitted and that the trial court erred in striking it and instructing the jury to disregard it. It was prejudicial error.

Plaintiff had alleged negligence of the defendant in that "she drove said vehicle at an excessive rate of speed for the then existing conditions, to-wit, in excess

of 50 miles per hour." The trial court did not submit the issue of excessive speed to the jury. Plaintiff assigns error in not so doing.

The plaintiff argues here that the lawfulness of the speed of a motor vehicle within prima facie limits is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing. Defendant concedes the rule but denies its applicability contending that plaintiff is limited by the above allegation to proof of speed "in excess of 50 miles per hour." Defendant cites no authority for the position taken. We find none. We find the rule to be: An allegation of negligence of a specific number of miles per hour as the speed of an automobile as constituting excessive speed does not limit the pleader to proof of that speed. He may prove a lesser rate as negligence. See Lindekugel v. Spokane, P. & S. Ry. Co., 149 Or. 634, 42 P. 2d 907, 99 A. L. R. 721, and decisions there cited. We find no merit in the above contention.

It has long been the rule that: The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing. Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758.

In passing it may be noted that there is some question as to the speed limit fixed at the time. The evidence is that it was "dusk" and that the night speed limit is 40 miles per hour. If that were true then defendant's evidence is that she was reaching that limit. However the matter is briefed here on the basis that the 50 miles per hour daytime limit is applicable and we proceed on that assumption. We have then the defendant driving on a main thoroughfare at the "imagined" speed of 35 to 40 miles per hour along a street where there were several approaches opening onto the highway; driving at dusk; seeing another car at least 150 feet ahead as it was crossing the highway; closing that 150-foot distance

without an application of brakes for about 90 feet; then skidding 61 feet to a collision hard enough to shove the car that was hit 10 feet sideways, damaging it severely; damaging her own car severely; and hitting with sufficient force to throw her about the car and cause severe personal injuries as well as car damage. In determining these matters each circumstance or condition is not to be weighed separately and so tested by the rule. The rule requires a consideration of all the circumstances and conditions taken together. The rule is applied to the integrated whole of the conditions.

We think this evidence sufficient to present a jury question as to whether or not the speed was greater than was reasonable and proper under the conditions then existing.

Defendant argues not only that there must exist special or unusual conditions which require a speed less than the prima facie limit but that the circumstances must be such that a "conclusion of excessive speed can be made with reasonable certainty." Here defendant relies on the following language taken from Krepcik v. Interstate Transit Lines, 152 Neb. 39, 40 N. W. 2d 252, which is: "Without describing the results with particularity it is reasonably inferable that the two vehicles came together with great force and violence. No definite or even reasonably definite conclusion may be drawn therefrom as to the speed at which the decedent was traveling at the time of the collision." Defendant overlooks the fact that we were there considering the issue of error in the granting of a judgment notwithstanding the verdict. We were weighing the evidence, in the quoted language, in the light of the convincing quality of the evidence that was required. Defendant also overlooks the fact that one of the issues was that of excessive speed, and that we held the evidence presented a jury question as to that issue. We so hold here. The trial court committed prejudicial error in

failing to submit the issue of excessive speed to the jury.

Plaintiff further assigns as error the giving of instruction No. 12 to the jury. It is: "You are instructed that a driver of an automobile upon the public highways of this state is required to have his or her auto under such reasonable control as will at all times enable him or her to avoid collision with other vehicles operated on said highway, but the law does not require such driver to anticipate negligence or violation of traffic regulation by another, in the absence of notice, warning or knowledge of such condition.

"It is for you to determine whether the plaintiff's decedent or the defendant failed to exercise due care in this regard."

Plaintiff relies on our holdings in Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669: "One is required only to have his car under such reasonable control as to be able to avoid a collision with other vehicles *whose drivers exercise due care.* Complete control which is such as will prevent collision by the anticipation of negligence on the part of another in the absence of warning or knowledge is not required." (Emphasis supplied.)

The above was quoted with approval in Burhoop v. Brackhan, *supra.* The objection is to the omission from the instruction of the requirement that the driver of the other vehicle must be in the exercise of due care. The contention is that the instruction as given places upon the driver of the one vehicle the duty to avoid collision with other vehicles operated on the highway.

Defendant does not disagree with the requirement that the "other" driver must be in the exercise of due care but contends that the last phrase of the instruction corrects the omission in telling the jury that the law does not require such a driver to anticipate negligence, in the absence of notice, etc.

The contention is a non sequitur. The first part of the

instruction relates to the measure of control that a driver must have of his own car to avoid collision with other vehicles using the highway. The second part relates to the anticipation of negligence on the part of the driver of the other car. This distinction appears in Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612, where the instruction used the word "lawfully" operated on the highway. We repeated "the exercise of due care" rule and in effect held that "lawfully operated" was synonymous with the exercise of due care.

Defendant also asserts that the duty to exercise ordinary care is charged to both parties by instructions Nos. 10 and 11. "Ordinary care" is defined in instruction No. 10, but it is not mentioned in the challenged instruction, although "due care" is mentioned as we presently point out. Instruction No. 11 sets out the provisions of the statutes and advises the jury that their violation is not negligence but evidence of negligence. The challenged instruction was not prejudicially erroneous.

The trial court instructed the jury in part as follows: "In the event you find the defendant is entitled to recover on her cross-petition, you will consider the whole evidence as given in the case bearing upon the items of damages for which you find the defendant entitled to recover.

"In the matter of pain and suffering, the law has no fixed rule but leaves that largely to the sound judgment of the jury, in reference to which you are to consider all the evidence as to the nature of the injuries, the extent and effect upon the defendant, if any, as shown by the evidence the defendant has sustained."

The plaintiff assigns this instruction as error in that it did not include the rule as to the measure of future pain and suffering which is: The only future pain and suffering which a jury is entitled to consider in the assessment of damages are such as the evidence shows with reasonable certainty will be experienced. Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643.

There was evidence from which it might be concluded that the defendant would have some future pain and suffering. However, the trial court in its instruction on the issues referred to pain and suffering "experienced" by the defendant. Other instructions were indefinite as to that matter. Reals v. Grazis, 125 Neb. 877, 252 N. W. 413, presented a similar situation and is contra to plaintiff's contention.

We think in this situation the plaintiff, had a specific instruction been desired, should have requested it under the rule that: Instructions must be considered and construed together, and if they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission and, unless this is done, the judgment will not ordinarily be reversed for such defects. Coyle v. Stopak, *supra.*

Defendant's property damage and medical expense as established without dispute was $678.45. Defendant prayed for judgment in the sum of $10,000. In its instruction on the issues the trial court so advised the jury.

During their deliberations the jury submitted a written question to the court: "May we enter a verdict on $678.45 plus Costs for Defendant or must it B $10,000 & costs?" The court in a supplemental instruction recited the question followed by "will say that the amount of your verdict, if it is for the defendant, should be the amount of damages you find she actually sustained in the matter."

The court had given instructions on contributory negligence, the rule of comparative negligence, and the reduction of damages sustained by the one entitled to recover because of contributory negligence. No question is raised as to those instructions here. The essence of plaintiff's complaint is that the supplemental instruction conflicts with the contributory negligence instruction and permitted defendant to recover damages sustained without qualification or limitation.

It is patent that the jury at the time the question was submitted had considered favorably a verdict for the defendant. It wanted to know if it could return a verdict intermediate of the two sums or if it was required to accept one sum or the other. The court answered that question. It does not appear that the jury was in any doubt about the rules of law given to it in the original charge. It may be assumed that it comprehended such parts of the original charge concerning which it raised no question.

Defendant denies error in the instruction and contends that even if erroneous, it was not reversible error when there is no claim that the verdict is excessive, citing Sgroi v. Yellow Cab & Baggage Co., 124 Neb. 525, 247 N. W. 355.

In Johnson v. Nathan, 161 Neb. 399, 73 N. W. 2d 398, this court held: "The rule is that a supplemental instruction is sufficient if it contains a correct statement when considered in connection with the main charge." See, also, Shermer v. Crowe, 53 Ga. App. 418, 186 S. E. 224; Elliott v. Floyd, 85 Ga. App. 416, 69 S. E. 2d 620.

For the reasons given herein the judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.