EDWARD SEKORA, APPELLEE, v. LEROY MANGERS, APPELLANT.

108 N. W. 2d 240

Filed March 17, 1961. No. 34898.

*Stiner & Boslaugh,* for appellant.

*W. E. Garrison,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and SPENCER, JJ.

MESSMORE, J.

This is an action at law brought in the district court for Nuckolls County by Edward Sekora, plaintiff, against LeRoy Mangers, defendant, to recover damages for personal injuries sustained by the plaintiff and property damage to his automobile due to the negligence of the defendant in a collision between the defendant's automobile and the plaintiff's automobile. The case was submitted to a jury, resulting in a verdict in favor of the plaintiff in the amount of $3,500. The defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. This motion was overruled. From the overruling thereof, the defendant appeals to this court.

The plaintiff's petition alleged in substance that on September 19, 1958, the plaintiff was driving his automobile in a northerly direction on the east side of State Highway No. 14, hereafter referred to as highway 14, and the defendant was driving his automobile in the same direction at a point 6 miles north of Nelson; and that the defendant ran into the rear end of the plaintiff's automobile causing damage to the plaintiff's automobile and injuries to the plaintiff. The plaintiff further alleged that the defendant was negligent in the operation of his automobile in the following particulars: (1) In operating his automobile at a rate of speed such as to endanger the safety of others lawfully upon said highway; (2) in failing to apply his brakes in time to avoid colliding with the rear of plaintiff's automobile; and (3) in failing to have his automobile under proper con-

trol as he approached the plaintiff's automobile when by the exercise of ordinary care on his part he knew or should have known he was liable to collide with the plaintiff's automobile. The plaintiff prayed for damages for personal injuries and for property damage to his automobile.

The defendant's answer to the plaintiff's petition denied every allegation therein except those admitted, and alleged an affirmative defense charging that the plaintiff was negligent in the operation of his automobile in the following particulars: (1) That the plaintiff entered highway 14 from the west traveling on State Highway No. 4, hereafter referred to as highway 4, at a time when he could have seen the defendant's automobile approaching on highway 14 from the south and he failed to look and see said approaching automobile; (2) that he failed to yield the right-of-way to the defendant who approached him from the right; (3) that he failed to stop or apply his brakes and thereby avoid said collision; (4) that he failed to have his automobile under proper control in approaching the intersection; (5) that he drove his automobile directly into the path of the defendant's automobile approaching and reaching said intersection from the south at approximately the same time when it was dangerous to all concerned to do so; (6) that he was traveling less than 10 miles an hour as he approached said intersection, thereby giving the defendant reason to believe that he would stop before entering the intersection; and (7) that he failed in approaching said intersection from the west to keep in the right lane of traffic on highway 4 and he failed in turning to the left to pass beyond the center of the intersection of said two highways as required by law. The defendant in his cross-petition prayed for property damage to his automobile.

The plaintiff's reply to the answer of the defendant was a general denial of the allegations therein, except those admitted in plaintiff's petition. Plaintiff's answer

to the defendant's cross-petition was in effect a general denial of the affirmative defense alleged therein.

The defendant assigns as error that the trial court erred in failing to sustain the motions of the defendant for a directed verdict made at the close of the plaintiff's case-in-chief and renewed at the conclusion of all of the evidence; and in failing to sustain the defendant's motion for a judgment notwithstanding the verdict or in the alternative for a new trial.

Section 39-7,109, R. R. S. 1943, provides in part: "The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, specifications, and special rules hereinafter stated: (a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right of the roadway until safely clear of the overtaken vehicle; * * *."

Section 39-7,108, R. R. S. 1943, provides in part: "(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. * * * (3) The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful: * * * (c) sixty-five miles per hour between the hours of sunrise and sunset and fifty-five miles per hour between the hours of sunset and sunrise upon any * * * highway that is a part of the state highway system outside of a city or village; * * *. (4) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * and speed shall be decreased as may be necessary to avoid colliding with any * * * vehicle * * * on or entering the highway in compliance with legal requirements and the duty of all persons to use due care; * * *."

Section 39-728, R. R. S. 1943, provides: "Motor vehicles traveling upon public highways shall give the

right-of-way to vehicles approaching along intersecting highways from the right, and shall have the right-of-way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time. In all other cases the vehicle reaching the intersection first shall have the right-of-way."

Section 39-741, R. R. S. 1943, provides in part: "(7) Intersection shall mean the area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other; * * *."

The foregoing provisions of the statutes relate to this appeal.

The record shows that this accident occurred about 4:15 p.m., on September 19, 1958. The day was clear and the pavement dry. The plaintiff was driving a 1952 Ford Tudor which was 5 feet 8 inches wide and 16 feet long. The defendant drove a 1957 Ford Vanette which was of ordinary car length but about 8 feet high and a little wider than the average automobile. It was a walk-in van about 17 feet long which weighed about 5,000 pounds and carried a cargo load of potato chips, Fritos, and rice weighing about 1,000 pounds.

The plaintiff testified that he was a farmer, 39 years of age, who for 3 years had lived a quarter of a mile north of the intersection where the accident occurred. At the time of the accident he had his five children with him. Their ages ranged from 2½ years to 10 years. He had picked up his children at school, and the accident occurred on his way home.

The defendant was 25 years of age at the time of the trial and was a route driver for a concern that sold snack products. He was alone in his automobile.

Highways 4 and 14 constitute a junction where the two highways join. Highway 4 runs east and west and highway 14 runs north and south. Highway 14 is surfaced with blacktop. Highway 4 extends west from

highway 14 and is graveled except for the area extending about 200 feet west of highway 14 which is blacktopped. As highway 4 approaches highway 14 from the west, it becomes wider from its normal width of 30 feet to a width of 346 feet when it joins highway 14. There is an embankment on the south side of highway 4 extending from the point where the blacktop on highway 4 joins the gravel at a point about 200 feet west of the midline of highway 14 to a point 57 feet west of the midline of highway 14. A driver proceeding east on highway 4, approaching highway 14, would be unable to see traffic approaching from the south on highway 14 in the area where this embankment is located on the south side of highway 4. After reaching a point 57 feet west of the midline of highway 14, a driver of an automobile would be able to see south to the crest of a hill on highway 14 which slopes down to the intersection. The crest of the hill is 1,600 feet south of the midline of highway 4.

At the time the accident occurred, there was a mailbox on the east side of highway 14, 57.3 feet north of the midline of highway 4, and a highway sign on the east side of highway 14, 219 feet north of the midline of highway 4. There are no stop signs at the intersection, nor signs governing the speed of automobile drivers on highway 14 approaching the intersection from the south.

The plaintiff testified that he entered the intersection in the area of the mailbox, which has now been removed, at a speed of 20 to 30 miles an hour as he entered highway 14; that prior to entering highway 14, he looked to the north and to the south and did not see any automobiles on highway 14; that he then entered highway 14; and that he heard a horn blow, then his automobile was struck in the rear part by the front end of the defendant's automobile. The only car he saw after entering highway 14 was the defendant's automobile. The plaintiff did not apply his brakes because he was afraid if he stopped his automobile suddenly

the defendant's automobile would hit his automobile again, and he just coasted to the north on highway 14. He then backed his automobile up, stopped, and got out of it. The defendant was getting out of his automobile. The plaintiff further testified that the defendant's automobile struck all of the right rear half of his automobile and a part of the left rear half of it; that the defendant's automobile, after the impact, was still on the highway off to the right of the blacktop; that he had a conversation with the defendant and it was decided that someone in authority should investigate the accident; and that the defendant told the plaintiff that he thought the speed of his automobile was 65 miles an hour. The plaintiff further testified that his automobile was in its proper lane going north on highway 14 when it was struck; that each lane of highway 14 is about 12 feet in width; and that the defendant said something about going around to the left side of the plaintiff's automobile to pass, but the defendant thought the ditch was too deep at that point, then he thought about going to the right to pass the plaintiff's automobile, and then struck the plaintiff's automobile. The defendant said that he had a load of boxes in his automobile which made his load rather topheavy. The plaintiff was familiar with this corner and with the intersection. He testified that he was traveling about 35 miles an hour as he approached the intersection, and reduced his speed to between 20 and 30 miles an hour as he entered the intersection; that he did not stop his automobile but had made his turn into the intersection and was driving north on his right side of highway 14 when the accident occurred; that he saw the defendant driving north toward him by looking into his rearview mirror, and the defendant's automobile looked very close to him when he heard the horn; that as he entered highway 14, there was 57 feet where he could see anybody coming from the south; that he looked to the south within that 57-foot area and could see to the south 1,600 feet; that he

had traveled 200 feet from the center of the intersection when the accident occurred; and that he finally got his speed up to 35 miles an hour. The plaintiff further testified that the damage to his automobile was in the amount of $518.37. There is also testimony in the record relating to injuries received by the plaintiff as a result of the accident.

The defendant testified that on the day of the accident he was going north on highway 14; that he was familiar with the intersection of highways 4 and 14; that he was traveling at a rate of speed of 55 miles an hour; and that as he proceeded north he saw the plaintiff's automobile coming from the west slowly cutting north at about 15 miles an hour. The defendant slowed down as he came to the intersection, believing the plaintiff would stop his automobile. At that time the front end of the defendant's automobile was touching the center of the intersection or very close to the center of the intersection. The defendant testified that he applied his brakes hard, but that they probably did not make any skidmarks until his automobile had proceeded north a ways because his automobile did not skid easily; that when he first realized that the plaintiff's automobile was coming in front of him, he could not go around it because the plaintiff was cutting across the intersection into highway 14, and when the plaintiff got across the centerline of the highway there was no time for him to pass the plaintiff's automobile; that he did not believe he could avoid the accident by turning his automobile to the right; and that when he got to the place at about the center of the intersection he could see the plaintiff, but he did not believe the plaintiff looked to see him, as the plaintiff was looking the other way. The defendant further testified that he was in his right lane going north, and the plaintiff's automobile was in the right lane going north on highway 14 when the collision occurred; that the defendant at that time was traveling at a rate of speed of 35 miles an hour; and that the

plaintiff and defendant talked after the collision, and the defendant thought he had made a statement that his automobile was traveling at 55 miles an hour. The defendant testified that the damage to his automobile was in the amount of $60.50.

On cross-examination the defendant testified that at a point 173 feet south of the center of the intersection he could see the plaintiff's automobile, and this automobile was within his vision until the time of the impact; that the plaintiff's automobile was ready to enter the intersection when he first saw it; that the plaintiff never got his automobile completely straightened out until the defendant was pretty close behind him; and that the plaintiff did not make a "square" turn but "rounded the corner." This witness further testified that it was at least 219 feet north of the centerline of the intersection where the impact occurred and that he kept the brakes on his automobile applied for a distance of 219 feet; and that the impact occurred 44 feet north of the end of the intersection.

On re-cross-examination the defendant testified that the plaintiff's automobile was in the intersection of highways 4 and 14 before the automobile of the defendant started to approach the intersection.

A deputy sheriff testified that he was called to the scene of the accident. The plaintiff and defendant were there when he arrived. He took certain measurements. He established a point to measure from, which was the mailbox 57.3 feet north of the midline of the intersection. He measured from that point north 132 feet, and at that point the defendant's automobile made skidmarks, or black marks, for a distance of 38 feet, so by his measurements the point of impact was 170 feet from the mailbox. He further testified that the black marks were out of the intersection; that the intersection had a "rounding corner" to the north from the west; that it was about 44 feet north of the end and out of the intersection where the impact occurred; and that

the point of impact was on the right side of highway 14 going north.

On cross-examination this witness testified that the corner where highway 4 intersects with highway 14 is a big, wide corner; that he filed a report to the effect that the defendant's automobile traveled 132 feet north from the mailbox; that the defendant applied his brakes but hit the plaintiff's automobile; that the plaintiff failed to see the defendant's automobile coming north on highway 14 and pulled out in front of the defendant's automobile; and that the defendant was unable to stop his automobile, and hit the rear end of the plaintiff's automobile. On redirect examination this witness testified that the statement that plaintiff's automobile pulled out in front of the defendant's automobile was his conclusion; and that the accident did not actually happen in the intersection of highways 4 and 14, at all.

The record discloses that there is no dispute in the evidence that the accident occurred 44 feet north of the end of the intersection of highways 4 and 14. The evidence also is to the effect that the plaintiff had negotiated the turn into and across the intersection of highways 4 and 14 and was proceeding in his proper lane of travel to the north on highway 14 when his automobile was struck in the rear by the defendant's automobile.

In Costello v. Hild, 152 Neb. 1, 40 N. W. 2d 228, this court said: "Upon approaching a highway intersection, it is the duty of the driver of an automobile to look to the right and left for approaching vehicles; whether or not he did his full duty in that regard may, in some cases, be a question of law where undisputed evidence or physical facts and circumstances control, but otherwise it is ordinarily one of fact for the jury upon consideration of all the evidence." See, also, Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175.

In Gorman v. Dalgas, 151 Neb. 1, 36 N. W. 2d 561, it is said: "The rules in this state are: '* * * when a person enters an intersection of two streets or highways

he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. * * * If he fails to see an automobile not shown to be in a favorable position, the presumption is that its driver will respect his right of way and the question of his contributory negligence in proceeding to cross the intersection is a jury question. * * * Before a verdict can be properly directed in such a case the position of the defendant's car must be definitely located in a favored position, otherwise the question becomes one for the jury. * * * Where he looks and does not see an approaching vehicle, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes that he can proceed and avoid a collision, the question is usually one for the jury.' Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596." See, also, Elliott v. Swift & Co., 151 Neb. 787, 39 N. W. 2d 617; Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246.

"When different minds may reasonably draw different conclusions from the same facts as to whether or not they establish negligence or contributory negligence, such issues should be submitted to the jury." Hammond v. Morris, 147 Neb. 600, 24 N. W. 2d 633.

In Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758, this court said: "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing." See, also, Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112; Tate v. Borgman, 167 Neb. 299, 92 N. W. 2d 697.

The record discloses evidence whereby the jury could find that the defendant was operating his automobile at a rate of speed greater than was reasonable and prudent under the circumstances then existing. This evidence consists of the skidmarks, the damage to the plaintiff's automobile, the rate of speed the plaintiff was traveling at the time of the accident, the force with

which the defendant's automobile struck the plaintiff's automobile, and the evidence of the deputy sheriff to the effect that there were no indications upon highway 14 that the defendant applied the brakes of his automobile at a distance of more than 38 feet.

In the light of the evidence and the authorities heretofore cited, we conclude that the judgment of the trial court should be, and is, affirmed.

AFFIRMED.

WENKE, J., not participating.