TONY A. ZAGER, APPELLEE, v. JANETTE JOHNSON, APPELLANT.

116 N. W. 2d 1

Filed June 29, 1962. No. 35197.

Fraser, Wenstrand, Stryker, Marshall & Veach, for appellant.

Haney & Walsh, William H. Mecham, and Robert D. Mullin, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action for damages for personal injuries and damage to property instituted by Tony A. Zager, plaintiff and appellee, against Janette Johnson, defendant and appellant, growing out of the collision between a truck operated by the plaintiff and an automobile operated by the defendant in Omaha, Douglas County, Nebraska. There was a cross-petition filed by the defendant which was withdrawn at the time of commencement of the trial by stipulation of the parties. At that time it was also stated that the withdrawal was without prejudice to any right of the plaintiff to prosecute his action against the defendant.

By answer the defendant admitted the collision but denied that it resulted from negligence on her part and alleged that it was caused by the negligence of the plaintiff.

The case was tried to a jury and a verdict was returned in favor of the plaintiff for $10,000. Judgment was rendered on the verdict. From this verdict and judgment the defendant has appealed.

The brief of the defendant contains seven assignments of error on the basis of which it is asserted that there should be a reversal of the judgment. It does not appear that each of these requires separate consideration. By the first the defendant urges that a motion to dismiss the action at the close of the plaintiff's evidence should have been sustained. By the second it is urged that a like motion should have been sustained at the close of all of the evidence. The two charge that the evidence was insufficient as proof of plaintiff's pleaded cause of action. But one subject is involved, hence separate consideration is not required.

In most of the particulars there is no material dispute in the facts relating to causation. The accident happened at about 5:30 p.m., on June 4, 1958, within the intersection of Thirty-ninth and Washington Streets, in Omaha, Douglas County, Nebraska. Weather and street conditions were good. The width of Thirty-ninth Street from curb to curb is about 24 feet, as is also the width of Washington Street. Washington Street runs east and west, and Thirty-ninth Street runs north and south. There were no obstructions of view to the intersection either from the north or west. There is a slight incline of Washington Street into the intersection from the west, but Thirty-ninth Street is practically level.

The plaintiff approached and entered the intersection from the north and at all times until the actual collision took place drove with the left side of his vehicle about 2 feet west of the centerline of Thirty-ninth Street.

The defendant approached and entered the intersection from the west and at all times until the collision took place drove with the right side of her vehicle north of the south side of Washington Street, but south of the center.

The collision took place when the front end of the plaintiff's truck was approximately 3 feet north of the south line of Washington Street and to the west of the centerline of Thirty-ninth Street. The front end of the automobile of the defendant struck about the middle of the west side of the truck. The two vehicles came to rest, after striking an automobile stopped to the south, and after plaintiff's truck ran into a tree a short distance southwest of the point of collision. As a result of the collision the defendant's automobile was hooked onto the back end of plaintiff's truck and was dragged until the truck hit the tree.

The undisputed testimony as to the speed of the plaintiff is that he was at all times of concern moving at the rate of 20 to 25 miles an hour. This is not to say however that the evidence as a whole was not capable of inference, under the disclosed circumstances, of a rate of speed which could be said to be in excess of the rate testified to by witnesses.

There was testimony that the speed of defendant's automobile at the time was from 30 to 35 miles an hour. It may not well be said that this testimony was incapable of belief. There also was testimony, not incapable of belief under the circumstances disclosed, that she was moving at a lesser rate. Here was a disputed question of fact.

If the defendant was proceeding at a rate of speed in excess of 25 miles an hour she was operating her automobile in violation of law. See § 39-7,108, R. R. S. 1943. This section provided that a city or village might by ordinance increase the maximum speed above the 25 miles an hour limit, but there is nothing in the record to indicate that the city of Omaha did so. In fact it is stipulated that the speed limit was 25 miles an hour.

There is a material dispute as to which of the parties here approached or entered the intersection first. Under the terms of the statute in force at the time, under circumstances such as are presented here, it is provided

that if two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right. See § 39-751, R. R. S. 1943. This same section however provides that the driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have. This section has been amended but in respects not of significance in this case.

In the light of this it becomes clear that if the defendant was operating her automobile at a speed of not to exceed 25 miles an hour and she approached the intersection at about the same time as did the plaintiff she had the right-of-way and it was the duty of the plaintiff to yield to her. If however on entering the intersection she was exceeding 25 miles an hour she forfeited the right-of-way.

It is pointed out here that a violation of this statutory provision by an operator of a vehicle to the right does not transfer the right-of-way to the one coming from the left, but, if proved, only bars from consideration on a trial the question of right-of-way as an element of negligence.

These questions were in dispute and were substantially submitted to the jury under instructions for determination.

Other pertinent disputed questions of fact were presented by the parties for consideration and determination. There was testimony on behalf of the plaintiff the substance of which was that he approached and entered the intersection at a safe rate of speed in such manner and in the light of observations made of the intersection and of the approach of the defendant as would in the exercise of ordinary and reasonable care have permitted him to pass through the intersection with safety and without collision with the automobile of the defendant.

On the other hand there was evidence which was

capable of an inference that the plaintiff, without cause or justification, without heeding what was in plain view, and without exercising care for his own safety, negligently operated his truck into the path of the automobile.

These questions of disputed fact were required to be submitted to a jury. In Meyer v. Platte Valley Constr. Co., 147 Neb. 860, 25 N. W. 2d 412, it was said: "Where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury. * * *." See, also, Pankonin v. Borowski, 167 Neb. 382, 93 N. W. 2d 41; Sekora v. Mangers, 171 Neb. 868, 108 N. W. 2d 240.

In opposition to the view that here were questions of disputed fact to be submitted to a jury, it is urged by the defendant that the plaintiff was shown, by the evidence to which reference has been made, to be guilty of contributory negligence in a degree sufficient as a matter of law to defeat a recovery. The controlling rule is stated in Meyer v. Platte Valley Constr. Co., *supra,* as follows: "* * * It is only where the evidence shows beyond reasonable dispute that plaintiff's negligence is more than slight as compared with defendant's negligence, that it is proper for the trial court to instruct the jury to return a verdict for defendant." See, also, Pankonin v. Borowski, *supra;* Sekora v. Mangers, *supra.*

The facts which, under law, were controlling were in dispute, and accordingly the questions in that area were required to be submitted to a jury. The court therefore did not err in overruling the motions to dismiss.

The third and fourth assignments of error deal collectively with different phases of instruction to the jury with regard to damages. Further they deal with the subject of whether or not, though the defendant was not entitled to a dismissal of the action, she is entitled to a new trial. The subjects will be considered without particular reference to the assignments.

By the instruction given by the court the jury was told, subject to other instruction with regard to the

effect to be given to contributory negligence if any was proved, that if its verdict was in favor of the plaintiff the jury would be required to ascertain the amount plaintiff had been damaged to his person and to his personal property, as well as the amount he had been obligated to pay for medical bills.

The jury was further told that in arriving at the amount it should consider loss of earnings, physical and mental pain, and suffering endured at and since the time of the accident and which he may endure in the future as the proximate result of the accident.

The instructions given in this area are not subject to criticism on account of any departure from abstract legal principle, but for the reason, as it is urged, that there is no evidentiary basis therefor. First, there is no evidence upon which to arrive at the damage which the plaintiff had sustained up to the time of trial or will sustain in the future. Second, it is urged that there is no basis for permitting the jury to assess damages on the basis of past and future pain and suffering.

As to the first, the record discloses that the damage to the truck of plaintiff was $775; that there was loss and damage to other property in about the amount of $206; that his total medical expense amounted to $75; that the plaintiff was off work about 3 weeks and he started work on his first roofing job after about 5 weeks; that he was required to employ help to perform work which he had previously done himself; and that this situation as to work obtained at the time of the trial. His business was that of a roofing contractor and the going rate for the work he performed was about $2.85 an hour. Prior to the accident he was able to work from 8 to 10 hours a day, but thereafter only 3½ to 4 hours.

The evidence of injury testified to by the plaintiff was that he spit blood two or three times; the calves of his legs were scratched and bleeding; his arms, chest, and the back of his neck bothered him; he had pain in his chest, arms, legs, back, and neck, and he had head-

aches; and at the time of trial he could not do such lifting as he did before and he had pain in his neck, lower back, knee, and elbow at times.

The doctor who examined the plaintiff in 1958 and again in 1961 testified that he found no broken bones. This testimony was based on his findings and a history given to him by the plaintiff. There is no material difference between the history and the testimony of the plaintiff covering the same subject. There was however a finding made in 1961 which did not appear in any finding in 1958. In 1961 he found some loose bodies in an elbow which he described as traumatic damage which limited use somewhat.

The doctor's attention was not called to the elbow in 1958. The record fails to disclose an opinion or conclusion of the doctor that this condition resulted from this accident. Also there was no other evidence from which a reasonable inference flows that it did so result.

From all of this it is clear of course that there was evidence of damage to property and doctor bills, but there was none from which a finding could be made as to damage in the operation of the business or of personal earnings of the plaintiff up to the time of trial. Also there was none as to how far or to what extent damage would extend into the future.

As to pain and suffering also, there was no evidence upon which to base a finding as to how long, or to what degree it would extend, if it would so extend, into the future.

Notwithstanding this lack of evidence as to damage and the lack of evidence as to duration of disability, the court instructed the jury to take these elements into consideration in arriving at the amount the plaintiff was entitled to recover. This was error on the part of the court of which the defendant has a right to complain.

In Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, this court said: "A jury should be fully and fairly informed as to the various items of damages which it

should take into consideration in arriving at its verdict. In this respect it is the duty of the trial court to instruct as to the proper basis upon which damages are to .be assessed for each such item." See, also, Benedict v. Eppley Hotel Co., 159 Neb. 23, 65 N. W. 2d 224.

In Hickman-Williams Agency v. Haney, 152 Neb. 219, 40 N. W. 2d 813, it was said: "Where an instruction is so worded as necessarily to leave the jury to uncertain conjecture as to the meaning, and therefore liable to lead the jury astray in their consideration of the case, it is good ground for new trial."

In Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254, it was said: "Damage for permanent injury may not be based upon speculation, probability, or uncertainty but it must be shown by competent evidence that such damage is reasonably certain as a proximate result of the pleaded injury."

In Patras v. Waldbaum, 170 Neb. 20, 101 N. W. 2d 465, it was said: "If the court either on request or on its own motion attempts to define a method of arriving at present worth or value of future damages, and the instruction fails to contain a legal or comprehensive definition, it is prejudicially erroneous." See, also, Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168; Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200.

In the light of what has been pointed out with regard to improper and insufficient instructions the defendant is entitled to have the verdict and judgment set aside.

By the fifth assignment of error the defendant urges that the court erroneously overruled a motion to strike certain evidence of plaintiff's doctor made after the completion of the introduction of evidence. This evidence described the condition of plaintiff's elbow at the time of examination made in 1961. In the light of what has already been said herein this is not evidence of causation by the accident, but only of the total condition at the time of examination. It was not objected to at the

time it was given. Under these circumstances it is difficult to see how the refusal to strike could be regarded as ground for reversal.

A mortality table was admitted in evidence on behalf of the plaintiff. This was assigned as error and considered under the sixth and seventh assignments of error. This evidence was erroneously received. This court said in Welstead v. Ryan Constr. Co., 160 Neb. 87, 69 N. W. 2d 308: "Life tables of expectancy may be properly received in evidence only when there is competent evidence that the claimed injuries are permanent." See, also, Lyons v. Joseph, 124 Neb. 442, 246 N. W. 859. As has been already indicated there is here no competent evidence of permanent injury.

For the reasons stated herein the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.